**In re DOW CORNING CORPORATION, Debtor.**

**Bankruptcy No. 95–20512.**

United States Bankruptcy Court,
E.D. Michigan,
Northern Division.

April 2, 1996.

Barbara J. Houser, Dow Corning Corporation, Midland, MI, for debtor.

Leslie K. Berg, Asst. U.S. Trustee, Detroit, MI.

Sheryl L. Toby, Detroit, MI, for Unsecured Creditors' Committee.

Alfred Lurey, Atlanta, GA, for Tort Claimants Committee.

Garrett L. Cecchini, Wright, Robinson, McCammon, Osthimer and Tatum, San Francisco, CA, for Medical Protective Co.

Reagan W. Silber, Silber, Pearlman & Bruegger, Dallas, TX, for Foreign Tort Claimants.

Jaye M. Bergamini, Glassen, Rhead, McLean, Campbell & Bergamini, Lansing, MI, for 84 Health Benefit Plans.

Michael H. Ahrens, Bronson, Bronson & McKinnon, San Francisco, CA, for Unofficial Committee of Unsecured Vendors.

John J. Bobrowski, Southfield, MI, for United Steelworkers of America.

### OPINION ON THE MOTIONS OF UNITED STATES TRUSTEE AND TORT CLAIMANTS' COMMITTEE FOR STAY PENDING APPEAL: MARCH 21, 1996 ORDER

ARTHUR J. SPECTOR, Bankruptcy Judge.

On March 21, 1996, the Court entered an order denying various parties' motions for the appointment of additional committees, etc., granting the physician claimants' motion for appointment of an additional committee of physician claimants, and ordering the United States trustee to appoint different members to the Official Committee of Tort Claimants (hereafter "the Order"). On March 28, 1996, the Official Committee of Tort Claimants (hereafter "TCC") took an appeal of the Order and filed a motion pursuant to F.R.Bankr.P. 8005, requesting the Court to stay the Order pending the appeal. On April 1, 1996, the United States trustee did likewise. Because the United States trustee's motion adopts the reasons stated in the TCC's motion, references in this opinion to the movant will be to the TCC only.

On September 15, 1995, the Court addressed the factors guiding a court's discretion on a motion for a stay pending appeal under Rule 8005. See "Opinion Regarding Motion of Tort Claimants' Committee for Stay Pending Appeal: Hartford Insurance Settlement." These factors are: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent the stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir.1991) (addressing the similar provision in F.R.App.P. 8(a)).

### *Likelihood of Success on the Merits*

■ After exhaustive analysis of the issue and much thought, I am convinced that the United States trustee made a serious error of law in appointing individuals to the TCC who do not themselves hold claims against the Debtor. It is highly unlikely that this determination was wrong. The TCC's contrary argument plainly lacks merit. The language of the Code could not be clearer that an official committee must consist of "creditors" (*see* once again, § 1102(a)(1)/(b)(1)) and that someone who has no claim is not a creditor. *See* (once again), § 101(10) (" 'creditor' means—(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or (C) entity that has a community claim.").

Even were there no express statutory authority for the Court to take action *sua sponte*, this would be one of those situations where such action should nevertheless be taken. One of the United States trustee's principal *raisons d'etre* is to guard and protect the bankruptcy system. Before the advent of the United States trustee, parties could and would agree to all sorts of extralegal or at least unanticipated and unauthorized practices to the ultimate detriment of the bankruptcy system. For example, trustees would routinely act as collection agents for secured creditors without any hope for recovery for the benefit of the general estate. The United States trustee now monitors such activities and objects not because parties in

interest may be harmed by the action, but merely to protect the integrity of the system. Who then is available when the United States trustee is the source of the improper practice, especially when the parties to the case, intentionally or otherwise, do not raise it? The answer, as it has always been even before the amendment to § 105(a), is the bankruptcy court itself. *See, e.g., In re Ray,* 46 B.R. 424 (S.D.Ga.1984) (bankruptcy court may dismiss cases *sua sponte* ); *In re Jephunneh Lawrence & Assocs. Cht'd,* 63 B.R. 318 (Bankr.D.Colo.1986) (same); *In re Connelly,* 59 B.R. 421 (Bankr.N.D.Ill.1986) (same); *In re Century City, Inc.,* 8 B.R. 25 (Bankr.D.N.J.1980) (same).

Although the Order directing the United States trustee to reconstitute the Tort Claimants Committee is unusual, the reasoning is just the latest application of a long-standing policy espoused by this Court and resoundingly approved of by the Sixth Circuit Court of Appeals. In his Comments of November 6, 1995, the United States trustee asserted in essence that appointing attorneys instead of the actual claimants as members of the TCC was the more practical and effective choice, and that to follow the plain meaning of § 1102 would be "putting form over substance." Comments, p. 6. This argument turns upside-down the United States trustee's position in the analogous situation of a person's eligibility to serve a reorganization in a § 327(a) context.

In three recent cases in the Court of Appeals for this circuit, the United States trustee appealed district court orders affirming a bankruptcy court's order accepting this very same argument or defended the district court's reversal of such a bankruptcy court order.

The first case was *In re Middleton Arms, L.P.,* 934 F.2d 723 (6th Cir.1991). In that case, the United States trustee appealed the bankruptcy judge's approval of the debtor's employment of a real estate agent under § 327(a) because the agent was not disinterested. Although the debtor conceded this point, the bankruptcy court held that "because the … debtors would be best served by [this real estate agent] the Bankruptcy Court's equitable powers allow it to give approval." *Id.* at 725. The district court agreed with the United States trustee and reversed the bankruptcy judge. The debtor appealed to the Court of Appeals and the court unequivocally sided with the district court and the United States trustee, reiterating a prior case's holding that bankruptcy courts "cannot use equitable principles to disregard unambiguous statutory language." *Id.*

In the next case, *In re Eagle–Picher Indus., Inc.,* 999 F.2d 969 (6th Cir.1993), the debtors retained Goldman, Sachs & Co. as its financial adviser even though the firm was concededly not disinterested because it was the managing underwriter of some of the debtor's outstanding bonds. Nevertheless, the bankruptcy court approved the employment of that firm because "it will need less time to familiarize itself with the Debtor's business and affairs than another financial adviser." *Id.* at 970. The Court of Appeals explained in no uncertain terms that although a particular appointment may satisfy practical exigencies, if it is foreclosed by the plain meaning of the Bankruptcy Code, the Court may not approve it. "Although it may make little sense to the bankruptcy court and the debtors—or, for that matter to this court—that Goldman, Sachs is not permitted to serve as financial adviser, the statute requires that result. This court is bound to apply the plain meaning of the statute even when the application apparently results in an apparent anomaly." *Id.* at 972. *See also id.,* n. 5, where the court explained:

> The debtors also make a subsidiary argument that this court has equitable powers under 11 U.S.C. § 105(a), and could base a decision to authorize the retention of Goldman, Sachs under that section. The government contends that this court does not have the discretion to consider whether it would be more expedient to allow the continued employment of a pre-petition professional, because that consideration is contrary to the plain language of the statute.
>
> The government is correct, and we do not need to address this contention of the debtors at length. *Middleton Arms* once again made clear, in interpreting this

same statutory section, that "bankruptcy courts 'cannot use equitable principles to disregard unambiguous statutory language.'" *Middleton Arms*, 934 F.2d at 725 (citation omitted). Thus, to the extent that the bankruptcy and district courts based their decisions in this case on equitable considerations—namely, the familiarity of Goldman, Sachs with the debtors' business operations—their reasoning was inappropriate.

The third case is *In re Federated Dep't Stores, Inc.*, 44 F.3d 1310 (6th Cir.1995). Once again the United States trustee appealed an order of the bankruptcy court approving the appointment of a professional that was not disinterested. The debtor again conceded[1] that Lehman Brothers' lack of disinterestedness was a "technical obstacle to Lehman Brothers' appointment" as its financial advisor. *Id.* at 1313. It nonetheless urged the bankruptcy court to approve the employment for practical reasons. It argued that "a denial of the Application would unjustly disadvantage the Debtors by denying it the assistance of the most uniquely qualified financial advisor, and by unduly burdening the estate ... with additional and unnecessary expense and causing significant delay in the reorganization process." *Id.* Despite the unambiguous words of the Code, and "over the strong objections of the United States Trustee" (*id.* at 1312), the bankruptcy court held that equity and "the need for a quick and effective reorganization warranted a departure from the strict language of the statute." *Id.* at 1313. But the Sixth Circuit, citing the previous two cases, reiterated its view that exigencies and practicalities cannot overcome the plain meaning of the Bankruptcy Code.

All of these cases follow this Court's own decision in *In re Gray*, 64 B.R. 505 (Bankr. E.D.Mich.1986), which was written before the United States trustee system came on line in this district. In that case, the Court disqualified an accounting firm and disallowed its compensation even after the firm had ren-dered services to the estate because the Court later learned that the firm was not disinterested. The Court rejected the debtor's argument that the accountant, which was intimately familiar with the debtor's books and records from its pre-petition services on behalf of the debtor, would greatly expedite the debtor's reorganization process. This Court's reasoning was the same as that of the Sixth Circuit in the three cases which followed.

Coincidentally, the United States trustee frequently cites *Gray* for the very proposition that practical considerations cannot prevail over the unambiguous words of the statute which prohibit certain persons from serving in certain capacities in the case. It is interesting that the rationale is good law for everyone else desiring to reach a "practical" result otherwise barred by the Code, but not the United States trustee.

While all of these cases involve § 327(a), the analogy to this case is apt. In both circumstances, the Court is determining that one or more individuals is not eligible, for purely statutory ("technical") reasons to serve in one capacity or another in the reorganization process of the debtor, notwithstanding the allegation that such individual or individuals are crucial, important, necessary, etc. While the Court disagrees that putting lawyers instead of the creditors on an official committee is at all "practical," the law of this circuit strongly suggests that such alleged practicality will be disregarded on appeal, just as it was here.

For this reason, apparently, the TCC is not content with addressing the real issue head on. Instead, the Committee raises peripheral issues to attempt to maintain what is plainly an illegally-constituted committee. For example, the TCC submits that "the appointment of attorneys to serve on creditors' committees is widespread—indeed, almost uniform—in mass tort bankruptcies." Emergency Motion of the Official Committee of Tort Claimants for Stay of Order Direct-

---

1. In all three of these cases the parties conceded that the professional did not fit within the statutory definition of disinterestedness. This Court concluded similarly that the attorney members of the TCC did not fit within the statutory definition

of creditor. In its motion, p. 7, the TCC does not concede this point. Given the plain language of the relevant statutes, we simply cannot understand the TCC's refusal to admit this point.

ing Appointment of New Tort Claimants' Committee, p. 7. Consequently, it is implied that this Court should have permitted it here.

There are at least two good responses to this "argument." First, the Court seriously doubts the accuracy of the statement; in fact, the contrary is probably closer to the truth.

Second, an appropriate response to the TCC's "argument" that this Court should tolerate the improper makeup of an official committee because other courts have done so is the rhetorical parental question to a child who whines for something of which the parent disapproves: "If your friend jumped off the Empire State Building would you do it too?" Thus, even were one to assume that in many cases attorneys have been named as members of official committees even though they themselves did not hold claims against the estate, this is hardly justification, let alone precedent, for repetition.

Furthermore, just as this Court was unaware of a potential problem until the fall of 1995, those courts may not have been sensitive to the issue. And even if they were aware of a potential problem, it is shameful to argue that if one court is derelict in its duty other courts should be too.

The TCC also argued that "the Court lacks authority to issue an order that the Committee be reconstituted when no party had requested such relief." Emergency Motion, p. 6. There are two things wrong with this statement: the premise and the conclusion.

The premise is incorrect because the 4,000 Australian tort claimants complained bitterly about the membership of the TCC. While one could argue that they did not more specifically focus on the issue which the Court found to be dispositive, it is clear that they nonetheless requested the Court "to declare the current committee not representative and *order the U.S. Trustee to, in effect, try again.*" Supplemental Brief in Support of . . . Expansion of Tort Claimants Committee, p. 9. They even specifically asked the Court to "order that the current Tort Claimants Committee be reconstituted." *Id.*[2]

■ Although the movants did not base their request that the Court reconstitute the TCC on the specific ground addressed by the Court, that is not in itself a basis to overturn the Court's order. For example, it is well-settled that, when a party moves for judgment based on reason A, the court can grant the motion for reason B so long as the non-moving party was given the opportunity to address reason B. *See, e.g., Gasser Chair Co. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 777–78 (Fed.Cir.1995); *Edwards v. Honeywell, Inc.,* 960 F.2d 673, 674 (7th Cir.1992); *Ware v. Trailer Mart,* 623 F.2d 1150, 1154 (6th Cir.1980); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2725 (1995). And all parties here were given ample time to do so.

■ Even if one agreed that the issue was not raised by a party, it is no longer a valid complaint that a bankruptcy court acted *sua sponte.* Section 105(a) of the Bankruptcy Code was amended in 1986 to clarify that "[n]o provision of . . . title [11] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." When the violator of the processes is the United States trustee—the so-called "policeman of the system"—the Court is duty-

---

**2.** And by seeking to add even one person to the Committee, the movant placed the membership of the TCC squarely in issue. Had the Court simply granted the motion and directed the United States trustee to name Mr. Silber and the other foreign claimant attorney-volunteer to the TCC, the Court would have, in effect, disbanded the old one and created a new TCC. *Cf.*, 59A Am.Jur.2d, Partnership, § 108 (A new partnership is formed with the addition or subtraction of a partner.).

In addition, by moving that he himself be added to the TCC, Mr. Silber put the issue of his own eligibility to serve on the table. ·Once it became clear that, as an attorney and not a creditor himself, he was ineligible to serve, the Court would have become a willing accomplice to the improper status of the TCC had it not acted as it did.

bound to act when it is convinced that no one else will raise the issue and that the act is indeed illegal. *In re Busy Beaver Bldg. Centers, Inc.,* 19 F.3d 833, 841 (3d Cir.1994) (referring to "the court's inherent obligation to monitor the debtor's estate and to serve the public interest.").

This Court is generally reluctant to use § 105(a). But sometimes, as here, its use is necessary to "carry out the provisions of . . . title [11]." 11 U.S.C. § 105(a). *See* 2 Collier on Bankruptcy, ¶ 105.01, at 105–4 (15th ed. 1996) ("Unlike the restriction under prior law . . . section 105 authorizes the bankruptcy court to . . . issue orders *'appropriate* to carry out the provisions of this title.' This change evidences Congress' intent that bankruptcy courts would, under the Bankruptcy Code, deal with all phases and aspects of a bankruptcy case.").

Finally, the TCC asserted that "the Court abused its discretion by waiting for 10 months before ruling, on purely legal grounds, that the present members are ineligible to sit on the committee." Emergency Motion, pp. 7–8. The premise of this argument, too, is incorrect. Since the decision was not a discretionary one,[3] it could not be an abuse of discretion. It turned on the plain meaning of the relevant portions of the Bankruptcy Code. Once the Court finally concluded that the TCC was improperly constituted, there was no discretion involved: the Court had to act.

Apparently, the TCC complains that the Court should have acted sooner. Citing several cases already discussed by the Court in the Opinion accompanying the Order for this very point, the TCC argues that "challenges to the composition of creditors' committees have been held untimely on the basis of far shorter delay." Emergency Motion, p. 8. What the TCC fails to appreciate is that timeliness is solely a factor affecting the Court's exercise of discretion as to whether to appoint an additional committee, and is considered after inadequate representation of the existing committee is already deter-

mined. *See* Opinion of March 21, 1996, p. 43–44. But, as stated above, the Court's decision was purely one of statutory interpretation, not an exercise of discretion. The Court merely held that, as a matter of law— and not as a matter of judgment or discretion—the United States trustee erred in appointing persons who are ineligible to serve. The whole notion of timeliness has no role to play in regard to this question. While the extent of remedial action will vary with the length of the delay, a court should not let something as serious as the makeup of a crucial committee go unaddressed merely because some time has passed. Thus, even if the Court did not come to the realization that the Committee was improperly constituted until a year from now, the Court still would have taken this action.

Moreover, the argument that the Court should have acted sooner is truly peculiar. On the one hand, the TCC clearly does not approve of the decision to oust the attorney-members. On the other, it argues the Court should have done it sooner.

With respect to the latter point, the Court raised the question of the propriety of attorneys serving on the TCC in the fall of 1995 and requested comments from the parties. Only the United States trustee saw fit to respond. The TCC itself never provided the Court with its position. As the TCC well knows, the Court has been flooded with matters of real or invented emergency importance. In addition, the Court was advised that other constituencies were in the process of moving for the appointment of additional committees, the adding of other representatives to the existing committees, and the like. It was hoped that the issue of the eligibility of the TCC's members to serve that committee would be put into adversarial focus when any one of these other constituencies came forward with such a motion. The Court proceeded when its workload permitted it to deal with the five pending motions and when it became clear that an adversarial posture was not likely to arise any time soon.

---

**3.** And notwithstanding press reports to the contrary, (*see Wall Street Journal,* March 25, 1996, p. B8) the decision was not the result of the Court "growing impatient over slow progress in the . . .

case," nor (contrary to the comment of Ms. Goldrich), with any attempt to obtain a more "compliant" Committee. *Id.*

If discretion were involved, the TCC might reasonably have cause to complain if the timing of the Order would seriously prejudice the rights of the tort claimants. But the Order does not reflect an exercise of discretion, and for the reasons to be addressed in the next part, the Court concludes that the TCC is not now and will not be prejudiced by the timing of the Order. Accordingly, I conclude that the movant's likelihood of success on the merits is slight.

### Irreparable Harm to Movant if Stay is not Granted

The Court carefully weighed the timing of the order to avoid prejudice to the tort claimants. When matters of central concern to the tort claimants and crucial to the future reorganization of the Debtor came on for hearing on March 7, 1996, the Court (*sua sponte*), and obviously against the wishes of the Debtor, continued them for 90 days. The Court was aware at that time, of course, of the action it was about to take. *See* Order Suspending Motions, etc. ("For reasons which will soon become obvious [and which are now, of course, known], the Court determines that it would be unfair to consider the Debtor's motion for a further extension of the exclusivity deadlines ... and the Debtor's motions to establish estimation procedures, including the appointment of an independent panel of scientific experts, to set a claims bar date and to approve one or more proof of claim forms and noticing procedures ...").

Since the entry of the Order, the Court has taken steps to ameliorate any harm which might otherwise result. The Court has twice *sua sponte* extended the deadlines for the TCC to appeal various matters of importance to that committee. *See* Ex Parte Order Extending Tort Claimants' Time for Appeal of Various Orders, entered March 25, 1996; Ex Parte Order Extending Tort Claimants' Time for Appeal of Order Authorizing and Approving Compromise and Settlement With North River Insurance Company, United States Fire Insurance Company, and International Surplus Lines Insurance Company, entered March 29, 1996. And on March 27, 1996, the Court signed an opinion overruling the TCC's objection to First National Bank of Chicago's motion for relief from the stay, which included this final sentence: "To accommodate the TCC in this uncertain time, the Court will refrain from entering an order for 20 days." The Court will remain available to provide similar relief until the newly populated TCC is up and running.

The TCC correctly states that the case is at a "critical juncture." Emergency Motion, p. 8. It argues from that fact that "the prejudice to tort claimants to the orderly handling of this case in the absence of a stay pending appeal is [therefore] potentially enormous." *Id.* The Court would be inclined to agree if it had not already taken action to give the new TCC a breathing spell allowing it time to get "up to speed" and be ready to proceed when we return to the critical juncture. If the new committee needs more time, it need but ask, and the Court will be most liberal in meeting these legitimate needs. The bottom line is: the Court will not push the TCC to respond to the Debtor's moves on the critical issues that remain until it is ready to join the battle. Under such circumstances, the tort claimants will not be prejudiced by the denial of the request for a stay pending appeal.

The movant is the Committee itself. If the Order is not stayed, the United States trustee will repopulate the committee, presumably this time with persons eligible to serve. This will be a benefit. If the Order is stayed, the TCC will limp along with its pedigree in continual doubt. This is a detriment. To the extent that the Committee will be disorganized until its new members are informed about its progress to date, the harm is not irreparable, for the reasons stated above. The Court therefore concludes that the TCC will not be irreparably harmed if the stay is not granted.

### Potential Harm to Others if a Stay is Granted

If the stay is granted, all future actions in this case will be under a cloud. An order based upon a motion served on the TCC in its present state could be subject to collateral attack on the ground that the TCC had already been determined to be illegally consti-

tuted, especially if this determination is ultimately upheld. Conversely, if the United States trustee appoints persons who are eligible to serve on the TCC, no such questions will arise. The potential harm of upsetting settled orders in this limbo period would be enormous. Even if such orders are not upset, the uncertainty created by a continuation of the present Committee pending what is likely to be (notwithstanding the TCC's present intention to expedite the appeal) a lengthy delay for one or more appeals is also substantial. Accordingly, the Court concludes that the potential harm to others if a stay is granted is substantial.

### *The Public Interest*

As the Court previously indicated, rarely is the public interest a definitive factor in Rule 8005 motions, primarily because what is at stake is usually a mere private financial dispute. In this matter, however, there really is some public interest. The Court's Order directing the United States trustee to reconstitute the TCC was not really an order involving the private contractual or other rights of the parties. Instead, this decision involves the proper allocation of power between coordinate branches of the federal government. It also involves important questions of public policy with respect to the eligibility of persons to serve on a statutory committee. These are all matters of public concern. However, the Court can perceive no public interest in granting the stay. While the public interest is involved in the dispute, this factor does not predominate in either direction.

Since none of the factors support the motions, they will be denied.

### *ORDER DENYING THE MOTIONS OF UNITED STATES TRUSTEE AND TORT CLAIMANTS' COMMITTEE FOR STAY PENDING APPEAL: MARCH 21, 1996 ORDER*

For the reasons stated in the opinion of even date, IT IS HEREBY ORDERED that the motions of the United States trustee and the Official Committee of Tort Claimants for a stay pending their appeal of this Court's Order of March 21, 1996, entitled "Order Regarding Various Motions For Orders To Appoint Additional Committees Or To Modify The Composition Of Existing Committees" are DENIED.