In re Rodger A. **VOGLIO** and Lori F. Voglio, Debtors.

**HESSINGER & ASSOCIATES, Appellant,**

v.

Rodger A. **VOGLIO**, and Lori F. Voglio, husband and wife; Honorable George B. Nielsen, Jr., United States Bankruptcy Judge; United States Trustee for the District of Arizona, Appellees.

Nos. CIV 94–1251 PHX ROS, BK–93–11068 PHX GBN.

United States District Court, D. Arizona.

Jan. 17, 1996.

---

Joseph Julius Hessinger, Pinetop, AZ, for Hessinger & Associates.

Rodger A. Voglio, Glendale, AZ, pro se.

Lori F. Voglio, Glendale, AZ, pro se.

Christopher J. Pattock, U.S. Trustee's Office, Phoenix, AZ, for Adrianne Kalyna.

## AMENDED ORDER

SILVER, District Judge.

This matter has come before the court on appeal from the United States Bankruptcy Court for the District of Arizona. Appellant, Attorneys Hessinger and Associates, appeals Judge George B. Nielsen's order of June 16, 1994 granting the U.S. Trustee's motion to adjudge a Chapter 7 debtor's prepetition agreement for postpetition payment of attorney's fees a dischargeable debt under 11 U.S.C. § 727.

*BACKGROUND* [1]

Rodger and Lori Voglio filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code in the District of Arizona Bankruptcy Court on October 26, 1993. *In re Rodger A. and Lori F. Voglio Case No. 93–11068–PHX–GBN.* In June of 1993, prior to filing for bankruptcy, the Voglios sought legal advice from attorney Duane Varbel. The Voglios learned of Varbel through television advertisements for his law firm's "zero down" bankruptcy services. The Voglios followed the advice received at that initial meeting with Varbel and then returned to the firm (which was by then called Hes-

singer and Associates) four months later to proceed with the Chapter 7 filing.

On October 9, 1993, before the filing of their petition for bankruptcy, the Voglios entered into a contract with Hessinger for postpetition payment of attorney's fees of $1200.00 to be paid in monthly installments of $110.01 plus interest of one and one half percent monthly or eighteen percent annually for a total payment of $1320.19. The Voglios also issued a $150.00 check to Hessinger for payment of their bankruptcy petition filing fee.

After the first meeting of the creditors, the Voglios began receiving letters from "Bailey Accounting" requesting payments for attorney fees. The Voglios called Hessinger to discuss the payment of attorney's fees which resulted in a meeting with Mr. J. Murray Zeigler, a lawyer at Hessinger. On December 30, 1993 the Voglios filed a motion in the bankruptcy court expressing their concern about the adequacy of Hessinger's legal representation. On March 16, 1994 a hearing was held at which the Voglios expressed their concerns about their lawyers and the payment of attorney's fees. Following the hearing Mr. Zeigler withdrew as debtors' counsel.

On March 9, 1994 the U.S. Trustee submitted a motion in the District of Arizona Bankruptcy Court to determine dischargeability and the amount of the debtors' obligation to Hessinger and Associates. A hearing on the motion was held on May 9, 1994 and Judge Nielsen granted the motion in an order dated June 16, 1994 from which Hessinger appeals to this court.

*ANALYSIS*

The facts are not in dispute in this case. Appellant Hessinger raises only questions of law. This court reviews the bankruptcy court's legal decisions *de novo. In re Wade,* 115 B.R. 222, 225 (9th Cir. BAP 1990).

I. *The dischargeability of a debt arising from a prepetition agreement for postpetition payment of attorney's fees.*

Appellant argues that a debt arising from a prepetition agreement for postpe-

---

1. Some of the background information is provided for its contextual value and *not* because it is material to the determination of the legal issue the court decides today.

tition payment of attorney's fees in a Chapter 7 bankruptcy proceeding does not constitute a dischargeable debt under the bankruptcy code. The code does not address this specific form of agreement for payment of attorney's fees. However, the provisions of Sections 101(5)(A), 523, 727(b) and 362(a)(6) of the Bankruptcy Code—as they relate to discharge of debts incurred prepetition—lead the Court to conclude that such debts are legally dischargeable. We examine each pertinent section below.

Section 727(b) of the Code provides for discharge of the debtor "... from all debts that arose before the date of the order for relief under this chapter and any liability on a claim ... as if such claim had arisen before the commencement of the case...." notwithstanding the section 523 provisions for exceptions to discharge. This section regulating the discharge of debts is "the heart of the fresh start provisions of the bankruptcy law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6340. Exceptions to dischargeable debts are delineated in Section 523 of the Code and do not include, expressly or by implication, prepetition agreements for postpetition payment of attorney's fees.

11 U.S.C. § 101(5)(A) defines a "claim" for purposes of bankruptcy as "a right to payment whether or not such a right to payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured...." 11 U.S.C. § 101(11) defines debt as "liability on a claim." In *Pennsylvania Department of Public Welfare v. Davenport* the United States Supreme Court asserted that the definition of "debt" "reveals Congress' intent that the meaning of "debt" and "claim" be coextensive." 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1989); S.Rep. No. 989, 95th Cong., Sess. 23 (1978); H.R.Rep. No. 595, 95th Cong., Sess. 309 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5809, 6266. The Court relied on the Code's legislative history in noting that the

language of "claim" is "expansive" rather than "restrictive." *Pennsylvania Department of Public Welfare*, 495 U.S. at 558, 110 S.Ct. at 2130; H.R.Rep. No. 595, 95th Cong., Sess. p. 309 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6266. Furthermore, the history states that "[b]y this broadest possible definition ... the bill contemplates that *all legal obligations of the debtor,* no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." (emphasis supplied) H.R.Rep. No. 595, 95th Cong., Sess. p. 309 (1977). S.Rep. No. 989, 95th Cong., Sess. p. 22 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5808, 6266.

The prepetition agreement between Hessinger and Associates and the Voglios gives rise to a debt for payment of attorney's fees. Since the Voglios lacked the funds to pay this debt prepetition it became a dischargeable debt pursuant to Section 727(b) of the Code. But see *In re Mills,* 170 B.R. 404 (Bankr. D.Ariz.1994).

Moreover, 11 U.S.C. § 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." *In re Torrez,* 132 B.R. 924, 938 (Bankr.E.D.Cal. 1991) (11 U.S.C. § 362(a)(6) prohibits efforts to collect any prepetition claim). Thus, the language and rationale of the sections of the code noted above support the conclusion that the Voglios' debt is legally dischargeable.

II. *The attorney's fees provisions of the Code as they relate to the provisions governing discharge of debts.*

The appellant maintains that in spite of the straightforward language of the discharge provisions, the provisions of the Code regulating the debtor's transactions with attorneys [2], allow for the debt incurred by the Voglios to survive discharge. Thus, the discharge provisions of the Code and those governing attorney and officer compensation create an ostensible conflict revealed here by the articulation of contrary views by two able

---

2. 11 U.S.C. § 329 "Debtor's transactions with attorneys," Federal Rules of Bankruptcy Procedure (FRBP) 2016 "Compensation for services dure (FRBP) 2016 "Compensation for services rendered and reimbursement of expenses" and FRBP 2017 "Examination of Debtor's transactions with Debtor's Attorney."

Arizona Bankruptcy Court Judges faced with the issue.[3] The Judges' differing conclusions are more reflective of the complexity of the issue and of the competing policy considerations implicated by it than of an inadequate legal analysis by either court. While the decision in *In re Mills,* 170 B.R. 404 may be justified on certain policy grounds, *In re Symes,* 174 B.R. 114 (1994) is more persuasive to this court because the court in *Symes* construes and applies the pertinent statutes more strictly.[4]

The appellant points to the provisions of 11 U.S.C. § 329 and of FRBP 2016[5] and FRBP 2017[6] as the basis for the contention that prepetition agreements for postpetition payment of attorney's fees survive discharge. The express language of § 329, FRBP 2016 and FRBP 2017 does not limit agreements between debtors and attorneys to *pre* petition payment of attorney's fees. However, prepetition agreements for postpetition pay-

ment are not explicitly provided for either. 11 U.S.C. § 329 states:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive to—

---

3. See the opinions of the Honorable George B. Nielsen, Jr. in *In re Symes,* 174 B.R. 114 (Bankr. D.Ariz.1994); and the Honorable Charles G. Case, II in *In re Mills,* 170 B.R. 404.

4. Like Judge Nielsen in *In re Symes,* the Honorable Alan Jaroslovsky of the United States Bankruptcy Court for the Northern District of California ruled in *In re Hessinger and Associates,* 165 B.R. 657 (Bankr.N.D.Cal.) that prepetition fee contracts are not enforceable postpetition pursuant to 11 U.S.C. §§ 362(a)(6) and 524.

5. Federal Rule of Bankruptcy Procedure 2016 "Compensation for Services Rendered and Reimbursement of Expenses" provides in pertinent part:

(a) Application for Compensation or Reimbursement

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared ... [t]he requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity.

(b) Disclosure of Compensation Paid or Promised to Attorney for Debtor

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file with the court within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity ... [a] supplemental statement shall be filed within 15 days after any payment or agreement not previously disclosed.

6. Federal Rule of Bankruptcy Procedure 2017 "Examination of Debtor's Transactions with Debtor's Attorney" provides:

(a) Payment or Transfer to Attorney Before Commencement of Case:

On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor, to an attorney for services rendered or to be rendered is excessive.

(b) Payment or Transfer to Attorney After Commencement of Case:

On motion by the debtor or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property or any agreement therefor, by the debtor to an attorney after the commencement of a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefore is for services in any way related to the case.

(1) the estate, if the property transferred

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12 or 13 of this title; or

(2) the entity that made such payment.

Hessinger contends: 1) the language of Section 329 is separate from and therefore not subject to the Code's discharge provisions, 2) the language of Section 329 and FRBP 2016 and FRBP 2017 contemplate agreements such as the one at issue here and as a result, 3) such agreements are unaffected by the Code's discharge provisions. Hessinger relies on the highly exacting requirements of § 329(a) which call for complete disclosure of attorney—debtor fee transactions. He also relies on provisions of § 329(b) authorizing court disgorgement of unreasonable fees ("cancellation provisions") to support the proposition that § 329 contemplates prepetition agreements for postpetition payment of attorney's fees. The appellant reasons that Congress would not have mandated attorney debtor agreement disclosure and court oversight of those agreements if it had intended those agreements to be ultimately subject to discharge.

Judge Case adopted this view in *In re Mills* in stating that "[t]he cancellation provisions of Section 329(b) are meaningless if Congress intended the obligations to be automatically discharged." This court disagrees that the cancellation provisions are rendered "meaningless" and notes that there is no authority for the supposition that the cancellation provisions of section 329(b) apply only to situations involving unreasonable agreements for *post* petition payment of attorney fees.

Appellant cites the future tense language of 11 U.S.C. § 329 requiring attorney disclosure of "compensation paid or *agreed to be paid* ... for services rendered or *to be rendered*" as indicative of Congress' intent to allow for postpetition payment of attorney's fees. (emphasis supplied). While such an interpretation has the ring of plausibility, the quoted language does not dispose of the issue

before the court. The language "compensation ... agreed to be paid" applies under a variety of circumstances including prepetition agreements for *pre*petition payments, in Chapter 11 and Chapter 13 cases and to compensation to be paid pursuant to a reaffirmation agreement between a debtor and an attorney.

Further, the legislative history of 11 U.S.C. § 329 does not directly address the appellant's position nor does it provide support for the proposition the appellant urges the court to accept. The history states "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." H.R.Rep. No. 595, 95th Cong., 1st Sess. 329 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 39 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5825, 5963, 6285. Similarly, the FRBP 2017 Advisory Committee Note is comparable to that of § 329; it states that this rule "is premised on the need for and appropriateness of judicial scrutiny of arrangements between a debtor and his attorney to protect the creditors of the estate and the debtor against overreaching by an officer of the court who is in a peculiarly advantageous position to impose on both the creditors and his client." FRBP 2017 Advisory Committee Note. *See* Collier on Bankruptcy 8 (Lawrence P. King *ed.*, 15th ed. 1995). Thus, the legislative history shows that the rationale for the stringent disclosure and oversight requirements is not to liberate prepetition debts for attorney fees from discharge but rather for the protection of the debtor, the creditors and the estate from abuses prone to occur because of the nature of the bankruptcy proceeding.

III. *Practical implications of the court's decision.*

In determining that the Voglios' debt is dischargeable, this court acknowledges that there may be negative implications for debtors who cannot afford to pay their attorney's fees before filing for bankruptcy. For instance, the court accepts the appellant's rea-

soning that debtors like the Voglios may have difficulty obtaining counsel if agreements for postpetition payment are discharged.

■ Nevertheless, debtors like the Voglios are not left without an alternative.[7] Under highly regulated circumstances, the reaffirmation provisions of the Code[8] permit the debtor to reaffirm a prepetition agreement which results in a discharged debt. While the *Symes* decision proffers reaffirmation as an option for debtors like the Voglios, the decision does not discuss the practical problems such agreements can present for debtors and their attorneys. 174 B.R. at 117.

■ Section 524(c)(3) contemplates that an attorney may represent the debtor in negotiating a reaffirmation agreement. In a situation like the Voglios', the attorney who has been retained in the bankruptcy proceeding would also be the party requesting the reaffirmation agreement. Consequently, an attorney under those circumstances cannot represent the debtor in negotiating the reaffirmation agreement because of a conflict of interest. Moreover, the attorney is required to disclose to the debtor that there is no legal obligation to reaffirm a debt while simultaneously that attorney must rely on reaffirmation if he is to be compensated for his services. Thus, the attorney who does not want to deal with uncertainty may be deterred from representing clients who cannot afford to pay attorney's fees prepetition.

## IV. *Conclusion.*

Absent specific instructions from the Code that debts for attorney's fees incurred prepetition should be exempt from discharge,

7. In *In re Symes,* Judge Nielsen suggests that because it is the lawyer's ethical obligation to perform legal services *pro bono*, debtors unable to pay bankruptcy services prepetition can rely instead on *pro bono* legal assistance. While *pro bono* assistance may occasionally be available, this court rejects this idea as an impractical and unrealistic solution. 174 B.R. at 117.

8. 11 U.S.C. § 524(c) provides in pertinent part:

An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable bankruptcy law, whether or not the debt is waived, only if—

(1) such agreement was made before the granting of the discharge of section 727 ... of this title;

(2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to such holder of the claim;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that such agreement—

(A) represents a fully informed and voluntary agreement by the debtor; and

(B) does not impose undue hardship on the debtor or a dependent of the debtor;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with

the court, whichever occurs later, by giving notice of recission [sic] to the holder of such claim;

(5) the provisions of subsection (d) of this section have been complied with; and

(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, this court approves such agreement as—

(i) not imposing an undue hardship on the debtor or on a dependent of the debtor; and

(ii) in the best interest of the debtor....

(d) In a case concerning an individual, when the court has determined whether to grant a discharge under section 727 ... the court may hold a hearing at which the debtor shall appear in person. At any such hearing, the court shall inform the debtor that a discharge has been granted or why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall—

(1) inform that debtor—

(A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and

(B) of the legal effect and consequences of—

(i) an agreement of the kind specified in subsection (c) of this section; and

(ii) a default under such an agreement;

(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section ...

this court is bound to follow the plain language of the Code which unequivocally provides that a debtor is discharged "... from all debts that arose before the date of the order for relief under this chapter and any liability on a claim ... as if such claim had arisen before the commencement of the case...." 11 U.S.C. § 727(b). While such a decision could discourage attorneys from providing services to individuals who are unable to pay attorney's fees prepetition, reading a solution to this potential problem into the bankruptcy code would be an improper exercise of authority by this court. The language of § 727(b) is plain and insofar as the Code does not adequately address the debtor's dilemma, Congress is the proper body to provide a remedy and the court would urge the Congress to supply that remedy now.

**IT IS ORDERED** affirming Judge George B. Nielsen's Order of June 16, 1994 granting the U.S. Trustee's Motion to Adjudge a Chapter 7 Debtor's Prepetition Agreement for Postpetition Payment of Attorney's Fees a Dischargeable Debt under 11 U.S.C. § 727.