**In re Jose A. NIEVES and Carmen E. Nieves, Debtors.**

**No. 99–26765–JES.**

United States Bankruptcy Court, E.D. Wisconsin.

Feb. 23, 2000.

868

David W. Asbach, Office of the U.S. Trustee, Milwaukee, WI.

Brett J. Pfeifer, Macey & Chern, Milwaukee, WI, David P. Leibowitz, Macey & Chern, Waukegan, IL, for debtor.

1. Bankruptcy Rule 2017 states:

**Examination of Debtor's Transactions with Debtor's Attorney**

(a) *Payment or Transfer to Attorney Before Order for Relief.* On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

(b) *Payment or Transfer to Attorney After Order for Relief.* On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney

## DECISION

JAMES E. SHAPIRO, Chief Judge.

At first blush, this appears to be a routine and uneventful chapter 7 case. No motions for relief from the automatic stay or for lien avoidance were filed. There were no reaffirmation agreements in this case. No adversary proceedings for denial of discharge under 11 U.S.C. § 727 or exception to discharge under 11 U.S.C. § 523 were brought. The chapter 7 trustee filed a report of no assets. On October 17, 1999, the debtors received a bankruptcy discharge.

What makes this case distinctive is the U.S. Trustee's challenge to the reasonableness of the attorney's fees charged by debtors' attorney, Macey & Chern, P.C. d/b/a *Legal Helpers* ("Legal Helpers") and, more specifically, to Legal Helpers' practice of offering its clients a "no money down" option for the payment of legal fees.

This dispute has been presented to the court upon the U.S. Trustee's motion for a determination of the reasonable value of services rendered by Legal Helpers, pursuant to Federal Rules of Bankruptcy Procedure Rule 2017[1] and 11 U.S.C. § 329(b)[2].

after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

2. 11 U.S.C. § 329(b) states:

**Debtor's transactions with attorneys.**

    \*    \*    \*    \*    \*    \*

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

The parties submitted briefs, and an evidentiary hearing was held on January 19, 2000. The court then took this matter under advisement.

After the U.S. Trustee's motion had been filed, Legal Helpers agreed to reduce its total fee to $700.00. Consequently, the U.S. Trustee withdrew that portion of its motion challenging the reasonableness of the total fees rendered in this case for all legal services performed, but retained its right to question whether such fees were reasonable should the court determine that the unpaid pre-petition services were discharged.

## FACTS

On May 14, 1999, Jose Nieves and his wife, Carmen Nieves, (hereafter either "debtors" or "the Nieves") met with Attorney Brett Pfeiffer of Legal Helpers for the purpose of filing a petition in bankruptcy under chapter 7. Legal Helpers is a Chicago-based operation which also maintains an office in Milwaukee, Wisconsin. At that time, Mr. Nieves was, and still is, employed at M.A. Garett as a machine operator. He was earning approximately $1,330.00 per month gross wages when his petition in bankruptcy was filed. His schooling consists of an 11th grade education which he acquired while living in Puerto Rico. Mrs. Nieves was working at Potawatomi Bingo Casino when the bankruptcy petition was filed and was earning approximately $950.00 monthly gross wages. The debtors were at that time, and still are, separated. The educational background and present employment of Mrs. Nieves are unknown because she did not appear at the evidentiary hearing.

Attorney Pfeiffer testified that there was a sense of urgency which required an immediate filing of this bankruptcy petition. Mr. Nieves testified that his wife had incurred "lots of bills." In addition, Mrs. Nieves' driver's license had been suspended because of an automobile accident in which she was involved and she was desirous of reacquiring her automobile license by receiving a bankruptcy discharge as soon as possible. In addition, the par-

ties' utilities were in danger of being shut off.

Mr. and Mrs. Nieves discussed with Attorney Pfeiffer different options for the payment of the legal services in connection with this bankruptcy case. One option ("flat fee option") called for a $650.00 payment up front as full payment for such services. The second choice ( "no money down option") involved making regular payments by means of a payroll deduction from the wages of Mr. Nieves after the bankruptcy petition was filed. This would involve payments of $42.50 for 20 pay periods, resulting in a total fee of $850.00. Regardless of which option was selected, the $175.00 bankruptcy filing fee had to be paid up front by the debtors. The debtors chose the second option. The Nieves signed an agreement with Legal Helpers which set forth the terms of payment, including the following provision:

**Collections** If you are a no money down client and your employer fails to deduct and forward to Macey & Chern your scheduled payroll deductions, you understand and agree that you are still liable to our firm for all fees you have agreed to pay. You further agree that if our firm is unable to collect their fees through your scheduled payroll deductions or by payments made by your directly to our firm, we will be forced to refer your account to collections and you will be held liable for all attorneys fees and costs incurred to collect your debt, which will amount to no less than $400.

The question of whether the debtors, after filing for bankruptcy, were legally obligated to pay for any unpaid pre-petition services which were performed by Legal Helpers was not discussed. The bankruptcy petition was filed on July 9, 1999.

Attorney Pfeiffer testified that Legal Helpers has received total fees in this case of $695.00, with the last payment received on October 18, 1999. Mr. Nieves disputes this assertion. He stated that his employer is continuing to deduct $42.50 weekly payments from his pay check and that the

most recent deduction was made on January 14, 2000. Mr. Nieves further believes that Legal Helpers has received substantially more than the claimed $695.00.

Attorney Pfeiffer stated that the total time rendered for legal services in this case was approximately 8.75 hours. Of this total, 5 hours were for pre-petition services and 3.75 hours were for post-petition services. Legal Helpers' hourly rate (in cases where an hourly rate was charged) is $150.00.

Mr. Nieves asserted that although he and his wife agreed to pay the $850.00 fee, he thought it was "a little expensive." He added, however, that the $700.00 which Legal Helpers had since agreed to accept as its total fee in this case was fair. Mr. Nieves added that he believed he was legally obligated to pay this entire fee regardless of whether a portion of this was for pre-petition legal services.

### LAW

The central issue in this case is whether unpaid pre-petition legal services which were rendered in connection with the filing for bankruptcy constitutes a dischargeable debt. There are several threshold issues which must first be addressed. They consist of the following:

1. Does the U.S. Trustee's have standing to raise the issue of dischargeability for pre-petition legal services;

2. Must this issue be raised by means of an adversary proceeding rather than by motion; and

3. Does this issue present a "case or controversy" or is it a request for an "advisory opinion?"

### Does the U.S. Trustee Have Standing?

■ "One of the U.S. Trustee's principal *raisons d'etre* is to guard and protect the bankruptcy system." *In re Dow Corning Corp.*, 194 B.R. 147, 148 (Bankr. E.D.Mich.1996). The legislative history

of the Bankruptcy Reform Act of 1978 indicates that Congress expected U.S. Trustees to oversee administration of bankruptcy cases and act as "watchdogs . . . prevent[ing] fraud, dishonesty, and overreaching in the bankruptcy arena." H.R.Rep. No. 95–595, 95th Cong. 1st Sess. at 88, 1978 U.S.Code Cong. & Admin.News pp. 5963, 6049. *See also In re A–1 Trash Pickup, Inc.*, 802 F.2d 774, 775 (4th Cir.1986). Further, Congress recognized that the United States Trustees "will serve as enforcers of the bankruptcy laws by bringing proceedings in the bankruptcy courts in particular cases in which a particular action taken or proposed to be taken deviates from the standards established by the proposed bankruptcy code." H.R.Rep. No. 95–595, 95th Cong. 1st Sess. at 109, 1978 U.S.Code Cong. & Admin.News pp. 5963, 6070. The U.S. Trustee actively monitors fees being sought by professionals in bankruptcy cases. This includes not only monitoring fees of professionals retained by the trustee under 11 U.S.C. § 330 but also monitoring fees for the debtor's attorney under 11 U.S.C. § 329.

■ In addition to the duties prescribed under 28 U.S.C. § 586 for the U.S. Trustee, 11 U.S.C. § 307[3] grants to the U.S. Trustee pervasive powers to raise, appear, and be heard on any issue in any case. The Code provides the U.S. Trustee with great latitude as to its degree of involvement in bankruptcy cases. *See Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1342 (7th Cir. 1987); *Collier on Bankruptcy*, § 6.01(2)(h); and *In re Columbia Gas Systems, Inc.*, 33 F.3d 294, 299 (3rd Cir.1994).

■ The U.S. Trustee's standing arises from the public interest in enforcing bankruptcy laws and from the explicit grant of authority in 11 U.S.C. § 307. *In re Biggar*, 110 F.3d 685 (9th Cir.1997), presented

---

**3.** 11 U.S.C. § 307 states:

**United States trustee.** The United States trustee may raise and may appear and be

heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title.

a similar fact situation to the case at bar. A chapter 7 debtor's attorney's fees were being scrutinized by the U.S. Trustee. As in this case, the question was whether the debtor's obligation to pay unpaid pre-petition services pursuant to an agreement which was entered into by the debtor and debtor's attorney was discharged as a pre-petition debt. The U.S. Trustee's position that such pre-petition services were discharged was upheld by the bankruptcy court, the district court, and the Ninth Circuit Court of Appeals. *Biggar* recognized the standing of the U.S. Trustee to raise this issue.

This court rejects Legal Helpers' contention that the U.S. Trustee is acting "in its self-appointed role of a trade regulator" and that "the U.S. Trustee's motivation seems to be to limit competition among bankruptcy practitioners." That is an unfair characterization of the U.S. Trustee's role in the bankruptcy process and of the purpose of its motion, which is to protect the integrity of the system.

There is authority which declares that the standing of the U.S. Trustee is not as broad as to permit to it the unrestricted right to raise any issue as a litigant without a further showing of the need to appear as a litigant. *See In re Washington Manufacturing Co.,* 123 B.R. 272, 275 (Bankr.M.D.Tenn.1991). But even under this view, based upon the circumstances of this case, the U.S. Trustee has established a solid need to do so here. It is doubtful that, had this issue not been raised by the U.S. Trustee, it would have been raised by the debtors who were not alerted by Legal Helpers to this issue. What is involved is a legal issue—whether or not the unpaid pre-petition services performed by debtors' counsel pursuant to the terms of its agreement constitutes a dischargeable debt.

4. Bankruptcy Rule 7001 states:
   **SCOPE OF RULES OF PART VII**
   An adversary proceeding is governed by the rules of this Part VII. It is a proceeding: ... (6) to determine the dischargeability of a debt; ...

5. Bankruptcy Rule 4007(a) states:

The court concludes that the U.S. Trustee has the standing to raise this issue.

### Must This Issue Be Raised By An Adversary Proceeding?

■ Legal Helpers argues that this issue can only be brought by an adversary proceeding pursuant to Bankruptcy Rule 7001(6).[4] Bankruptcy Rule 4007(a)[5] declares that the only persons who can commence an adversary proceeding for a determination of dischargeability of a debt are the debtor and any creditor. Legal Helpers suggests that the U.S. Trustee is, therefore, prohibited from raising this issue. The court does not agree. It only means that the U.S. Trustee must raise the issue by means of a motion rather than by an adversary proceeding.

The U.S. Trustee has raised this issue by motion in other cases. *See In re Martin,* 197 B.R. 120 (Bankr.D.Colo.1997); *In re Hessinger & Associates,* 192 B.R. 211 (N.D.Cal.1996); *In re Voglio,* 191 B.R. 420 (D.Ariz.1996); *In re Biggar,* 110 F.3d 685 (9th Cir.1997); *In re Symes,* 174 B.R. 114 (Bankr.D.Ariz.1994); *In re Haynes,* 216 B.R. 440 (Bankr.D.Colo.1997); *In re Jastrem,* 224 B.R. 125 (Bankr.E.D.Cal.1998). In none of these cases was the method authorized by the U.S. Trustee in raising this issue challenged. The U.S. Trustee's motion is the proper way to bring this matter before the court.

### Does This Issue Arise In A "Case Or Controversy" Or Does It Involve An "Advisory Opinion"?

■ Legal Helpers also contends that there is no case or controversy and that federal courts must not render advisory opinions, citing *Coffin v. Malvern Federal Savings Bank,* 90 F.3d 851, 853 (3rd Cir. 1996).

**DETERMINATION OF DISCHARGEABILITY OF A DEBT**
(a) *Persons Entitled To File Complaint.* A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt.

A real controversy does exist here. The dispute is between the U.S. Trustee in its role seeking to preserve the integrity of the bankruptcy system and Legal Helpers. This court is not being asked by the U.S. Trustee to render a decision based upon a hypothetical situation. What is involved is an actual set of facts. At the outset of the evidentiary hearing, the court informed both parties that its ruling in this case is limited to the facts and circumstances before it. Although its decision may be used as precedent in other cases, it is not being rendered for the purpose of establishing a general policy in this district.

### Do Unpaid Pre–Petition Legal Services in a Bankruptcy Case Constitute a Dischargeable Debt?

■ 11 U.S.C. § 727(b) recites in part: Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges a debtor from all debts that arose before the date of the order for relief under this chapter . . . .

It is beyond dispute that the unpaid pre-petition services rendered by Legal Helpers created a debt which arose before the date of the order for relief. It is also undisputed that 11 U.S.C. § 523 does not contain any specific exception for discharge for unpaid pre-petition legal services performed by a debtor's attorney in connection with the bankruptcy case. It is also well established that exceptions to discharge shall be narrowly construed. *See Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Juzwiak,* 89 F.3d 424, 427 (7th Cir.1996).

The great weight of authority holds that a chapter 7 discharge covers attorney's fees owed by a debtor for services involved in preparation for filing the bankruptcy case, notwithstanding any terms of the agreement between debtor's attorney and the debtor to the contrary. *See In re Martin, supra; In re Hessinger & Associates, supra; In re Voglio, supra; In re Biggar, supra; In re Symes, supra;* and *In re Haynes, supra; In re Jastrem, supra. But see In re Mills,* 170 B.R. 404

(Bankr.D.Ariz.1994) (there is an "implied exception" to discharge for pre-petition bankruptcy fees); *In re Perry,* 225 B.R. 497 (Bankr.D.Colo.1998).

■ This court aligns itself with the majority view. A court must be careful not to engage in legislation. *See In re Kasson Inc., USA,* 109 B.R. 352 (Bankr. E.D.Wis.1989). The Seventh Circuit has dispatched a clear message in recent decisions that courts must not engage in judicial legislation, holding that a court of equity does not have "free floating discretion to redistribute rights in accordance with its personal views of justice and fairness." *Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad,* 791 F.2d 524 (7th Cir. 1986).

■ The provision in the agreement signed by Legal Helpers and the debtors which obligated the debtors to pay the entire fee is unenforceable. A debtor may not contract away the right to a discharge in bankruptcy. *See Klingman v. Levinson,* 831 F.2d 1292, 1296, n. 3 (7th Cir. 1987). Section 727(b) is very clear. Absent a specific exception to discharge under § 523, the lawyer who furnishes pre-petition bankruptcy services and who is unpaid for such services is in the same boat with other unpaid pre-petition creditors.

■ Legal Helpers seeks to justify its "no money down" practice upon what it deems is an "unwritten doctrine" within the Bankruptcy Code. It asserts that the doctrine of necessity and the new value corollary to the absolute priority rule are other examples of the existence of this "unwritten doctrine." The court rejects that argument. It is unnecessary for this court to decide whether there is such an "unwritten doctrine" because § 727(b) is very clear on the subject of the discharge of pre-petition claims, and in 11 U.S.C. § 523, there is no exception to discharge for pre-petition attorney's fees. "[W]here as here, the statute's language is plain, 'the sole function of the courts is to enforce it

according to its terms.'" *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 1030–33, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. U.S.,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

### What Is a Reasonable Fee for Legal Helpers' Post–Petition Services?

 As previously noted, the total agreed fee for all services rendered in this case, both pre-petition and post-petition, is now $700.00. The post-petition services (3.75 hours) represents approximately 42.8% of the total of both pre-petition and post-petition services (8.75 hours). This court, therefore, concludes that $300.00 is a reasonable fee for the post-petition services. All other sums which Legal Helpers has received in connection with this case over and above $300.00 shall be refunded to the person who paid these fees—in this case, the debtor, Jose Nieves. Repayment shall be made within ten days from the date of this decision and order. An affidavit verifying such repayment shall be served by Legal Helpers upon the U.S. Trustee and filed with the court within five days of such payment.

This court fully recognizes that, by virtue of this ruling, debtors who cannot afford to pay attorney's fees before filing for bankruptcy may have difficulty in obtaining legal counsel. There are some ways, short of legislation, which can be utilized to overcome this obstacle. One method is for the debtor to enter into a reaffirmation agreement with debtor's counsel. However, that leads to problems because this will create a conflict of interest between the debtor and debtor's attorney and may well necessitate the debtor obtaining independent counsel in connection with negotiating and signing the reaffirmation agreement. This, in turn, would involve additional expenses which the debtor may not be able to pay. Another solution is for the debtor's counsel to file the bankruptcy petition immediately, but defer filing of the bankruptcy schedules and statement of affairs and performing any other legal services until after the petition has been filed.

This would shift a considerable portion of the attorney's work from pre-petition legal services to post-petition legal services. There may be other creative solutions which will work, but one which will not work is the request for the court to establish a judicial exception to discharge. That request should be made to Congress, not here.

This decision shall stand as and for the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.