**In re Sara L. CHANDLIER, Debtor.**

**No. SM 00–90786.**

United States Bankruptcy Court, W.D. Michigan.

April 16, 2003.

See also 247 B.R. 660.

Randolph B. Osstyn, Osstyn, Bays, Ferns & Quinnell, Marquette, MI, for creditor.

Michael K. Pepin, Menominee, MI, for debtor.

## OPINION

JO ANN C. STEVENSON, Bankruptcy Judge.

This matter comes before the Court on the United States Trustee's Motion Requesting Review and Disgorgement of Attorney Compensation Under 11 U.S.C. § 329(b) and Rule 2017 and Sanctions Under 11 U.S.C. § 362. The Court bases its decision on the briefs filed by both parties and the cases cited therein, as well as oral arguments.

On April 17, 2000, the Honorable James D. Gregg issued an Opinion and Order in the case of *In re Desilets*, 247 B.R. 660 (Bankr.W.D.Mich.2000) holding that Allan J. Rittenhouse was not an attorney authorized to practice law in Michigan and by extension was not authorized to practice bankruptcy law in the United States Bankruptcy Court for the Western District of Michigan. Sanctions against Mr. Rittenhouse were to be determined at a later *en banc* hearing. Mr. Rittenhouse appealed this decision but did not obtain a stay pending appeal.

The *en banc* hearing took place on August 23, 2000, during which Mr. Rittenhouse stipulated to the entry of an Injunction Order prohibiting him from practicing law in the Bankruptcy Court for the Western District of Michigan until further order of the Court. The Injunction Order was entered on September 26, 2000.

While his appeal was pending, Mr. Rittenhouse and another attorney, Michael Pepin, made the following arrangement: Mr. Pepin would become the attorney of record while Mr. Rittenhouse would work as his paralegal; Mr. Pepin would become Mr. Rittenhouse's tenant; and in exchange for $500 per week, Mr. Pepin would sell to Mr. Rittenhouse any accounts receivable generated by Mr. Rittenhouse's advertisements, while at the same time, Mr. Pepin would retain his own clients obtained through his own advertising.

On November 6, 2000, Mr. Pepin filed a bankruptcy petition for Sara Chandlier listing himself as attorney for the Debtor. He also executed two reaffirmation agreements on her behalf.

The Chandlier 341 meeting was scheduled to be held on December 7, 2000. Mr. Pepin did not appear. Consequently, the Chapter 7 Trustee, Darrell Dettman, adjourned the hearing to December 21, 2000. The hearing took place on that date but again, without the presence of Mr. Pepin.

On June 3, 2002, the Sixth Circuit Court of Appeals reversed Judge Gregg's Opinion and in response, the Bankruptcy Court dissolved the Injunction against Mr. Rit-

tenhouse with an Order entered on September 20, 2002.

Two months later, Mr. Rittenhouse wrote Ms. Chandlier a letter requesting $800 in legal fees stating that he was the attorney in her Chapter 7 case. On December 17, 2002, the U.S. Trustee filed the current Motion under consideration to prohibit Mr. Rittenhouse from collecting this fee.

The U.S. Trustee contends that in order for Mr. Rittenhouse to prevail he must first show privity with the Debtor. In other words, he must prove that either he was her attorney or he bought the account receivable. Second, and perhaps more important, the U.S. Trustee asserts that the pre-petition attorney fees were discharged with the filing of the Chapter 7 petition and although there is a split in authority, the majority of cases agree. Should the Court find that the Chapter 7 fees were discharged, the privity issue becomes moot.

In addition to summoning the Doctrines of Laches and Necessity, Mr. Rittenhouse contends that an Order entered in *In re Melanie Syrjala–Mattila,* Case No. 99–90513 allows him to collect fees in the present case because the Syrjala–Mattila Order states that he shall refrain from collection efforts until such time that he prevails on his appeal in the *Desilets* case.

Mr. Rittenhouse also argues that Fed. R. Bankr.P. 1006 states a clear intent by Congress to help debtors by allowing the filing fee to be paid in installments and subordinating the payment of attorney fees until the filing fee has been paid in full. Therefore, Mr. Rittenhouse further argues, all attorney fees earned prior to the 120 day period allowed for installment payments within B.R. 1006 would be considered pre-petition and discharged. Congress, Mr. Rittenhouse contends, surely did not expect this result. He therefore urges the Court to look to the provisions of the entire law, its object and policy.

Mr. Rittenhouse asks the Court to adopt the minority view as espoused in *Bethea v. Adams (In re Bethea),* 275 B.R. 284 (Bankr.N.D.Ill.2002); *In re Perry,* 225 B.R. 497 (Bankr.D.Colo.1998); and *In re Mills,* 170 B.R. 404 (Bankr.D.Ariz.1994). These courts see a conflict between § 727 and § 523 on the one hand and Fed. R. Bankr.P.2016 and 2017 and 11 U.S.C. § 329 on the other.

11 U.S.C. § 329(b) requires a debtor's attorney to file "a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." The *Bethea* court reasoned that through this Code section, Congress explicitly contemplated that there will be some instances in which the debtor will have already paid all the fees before the case is commenced and the remedy for excessive fees payable in the future would be unnecessary if their collection is subject to the automatic stay and permanently extinguished by the discharge. *Id.* at 289.

Fed. R. Bankr.P.2016 and 2017 implement § 329. Rule 2016(a) regulates applications by professionals, including attorneys, for compensation from the estate. It requires counsel for the debtor to file a disclosure statement identifying fee arrangements and the amount of compensation paid or agreed to be paid by the debtor. Fed. R. Bankr.P.2016(b). Rule 2017 delineates the procedure by which payments to debtor's counsel are reviewed under § 329.

In *Perry,* 225 B.R. at 500, the court found "that Congress, by enacting Section

329 and adopting Rules 2016 and 2017, clearly contemplated the existence of fees 'agreed to be paid ... for services rendered or to be rendered' in contemplation of and in connection with a bankruptcy case." By legislating a method of disclosure of attorney fees and providing a method to regulate these fees to protect vulnerable debtors, the court assumed that Congress intended to create an exception to discharge for pre-petition attorney fees.

■■■ We find however, that the language of § 329 merely requires that fees paid or agreed to be paid be fully reported. It does not mean that all fees reported are allowed, simply that the court has the power to scrutinize these fees. In addition, § 329 applies to all Chapters in the Bankruptcy Code, not just Chapter 7. Certainly in Chapters 11 and 13 and to a lesser extent in Chapter 7, there will be ongoing fee petitions that need to be reviewed. Section 329 simply gives the court authority to do this.

*Bethea* also discusses the impact of Fed. R. Bankr.P. 1006(b)(3) which provides:

*Postponement of Attorney's Fees.* The filing fee must be paid in full before the debtor or chapter 13 trustee may pay an attorney or any other person who renders services to the debtor in connection with the case.

"Nobody could seriously argue that Congress intended to make it impossible for chapter 7 debtors, but not debtors under the other relief chapters, to enter into agreements with their bankruptcy attorneys providing for payment after the commencement of the case." *Id.* at 295.

■■■ To the contrary, we find there is no language in this statute which creates an exception to discharge. It is outside the ambit of this Court to legislate a new exception especially when based on the tenuous interpretation of a statute that involves the allowance of payment of filing fees in installments to say it also means that pre-petition attorney fees are not extinguished by the discharge.

11 U.S.C. § 727(b) states in pertinent part:

Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . .

11 U.S.C. § 523(a) sets forth eighteen exceptions to the discharge granted under § 727. Unpaid attorney fees earned prior to the filing of the petition are not among them.

Consequently, we are more inclined to follow the reasoning of the majority view, that being, had Congress intended to create an exception to discharge for unpaid pre-petition attorney fees it would appear in § 523. *In re Martin,* 197 B.R. 120 (Bankr.D.Colo.1996); *Hessinger and Associates v. Voglio (In re Voglio),* 191 B.R. 420 (D.Ariz.1996); *In re Nieves,* 246 B.R. 866 (Bankr.E.D.Wis.2000); *In re Toms,* 229 B.R. 646 (Bankr.E.D.Pa.1999); *In re Jastrem,* 224 B.R. 125 (Bankr.E.D.Cal. 1998). "Public policy concerns cannot trump the plain language of the Code." *Hessinger and Associates v. U.S. Trustee (In re Biggar),* 110 F.3d 685 (9th Cir.1997).

Of course, the public policy concerns highlighted by Mr. Rittenhouse are not completely one-sided. On the other side of a public interest in seeing that debtors receive adequate representation, lies one of the most important policies of the Bankruptcy Code: providing the honest debtor with a fresh start. To that end, if Congress wishes to amend the Bankruptcy Code to include an exception for pre-petition attorney fees it may, but it is outside the domain of this Court to do so.

There are several creative solutions to assist debtors who have difficulty raising funds for legal representation prior to a bankruptcy filing. Because this is only the second time this issue has arisen before this Court,[1] we assume that most bankruptcy practitioners know of these solutions and use them in one form or another.

■ The most obvious answer is to require full payment from the debtor in advance. See *Gordon v. Hines (In re Hines)*, 147 F.3d 1185, 1189 (9th Cir.1998). Debtors commonly defer payments of other debts or borrow from family or friends. Attorneys can also lessen their exposure and the financial burden of the debtor by quantifying pre and post-petition services and requiring payment of pre-petition services up-front. *Id.* at 1190. Some courts allow reaffirmation of the pre-petition attorney fees. See *In re Perez*, 177 B.R. 319 (Bankr.D.Neb.1995) There is also the option of accepting payment by third-party guarantors. Any of these methods would protect both the attorney and the debtor.

As for the argument that the Order in *In re Melanie Syrjala–Mattila*, Case No. 99–90513 authorized the collection of fees, the Order states: "Allan Rittenhouse shall refrain from collection efforts against Melanie Syrjala–Mattila until such time that he prevails on his appeal of the issue as to whether he is allowed to practice before the Bankruptcy Court in the Western District of Michigan."

This Order does not state that the compensation sought by Mr. Rittenhouse must be allowed, nor does it consider any defenses available to the debtor. The Order merely stays Mr. Rittenhouse from collection efforts until the outcome of the appeal is determined.

■ The Doctrine of Necessity is inapplicable. That Doctrine is a rule of payment that allows trustees to pay pre-petition debts in order to obtain continued supplies or services essential to a debtor's reorganization. The Doctrine itself is a violation of 11 U.S.C. § 507 and in fact, is not authorized by any Bankruptcy Code section. When it has been applied, it allows payment in a Chapter 11 case under very extraordinary circumstances of a few critical vendors who furnish the debtor with unique and vital supplies so that the debtor can operate and reorganize. *In re CoServ, L.L.C.*, 273 B.R. 487, 491 (Bankr.N.D.Texas 2002).

This is not a Chapter 11 case. Mr. Rittenhouse is not a vendor or supplier to the Debtor and the Debtor does not need any further services from Mr. Rittenhouse. If Mr. Rittenhouse should refuse to perform further legal services, there are any number of other attorneys available to consult with the Debtor.

■ The Doctrine of Laches is designed to promote diligence and prevent enforcement of a stale claim. This Doctrine is triggered when there has been an unreasonable and inexcusable delay in bringing a claim and there has been a material prejudice to the opposing party as a result of the delay. *In re Daniels*, 270 B.R. 417 (Bankr.E.D.Mich.2001).

■ Mr. Rittenhouse wrote his client a demand letter on November 19, 2002. The U.S. Trustee filed this Motion on December 17, 2002. There was no indication previous to Mr. Rittenhouse's letter that he intended to collect pre-petition legal fees from any debtor. Consequently, we find that the U.S. Trustee's Motion was neither untimely nor late and there is no prejudice suffered by Mr. Rittenhouse.

---

**1.** The other case being, *In re Baldus*, Case No. 96–84377 which was settled by agreement of the parties in an Order dated November 6, 1996.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. In accordance with the attached Opinion, Debtor's Counsel shall cease all collection efforts on accounts receivable purchased from Michael Pepin for any pre-petition fees incurred prior to a Chapter 7 filing;

2. A hearing shall be held on May 16, 2003 at 9:30 a.m. attended by Mr. Rittenhouse and the U.S. Trustee to determine any sanctions that may be imposed upon Mr. Rittenhouse.

3. A copy of this Opinion and Order shall be served by first-class United States mail, postage prepaid upon Allan J. Rittenhouse, Esq. and Michael V. Maggio, Esq., U.S. Trustee.