In re Jerry B. JASTREM, Debtor.

Bankruptcy No. 98–91648–A–7.

United States Bankruptcy Court,
E.D. California,
Modesto Division.

Aug. 25, 1998.

**126**

Edmund Gee, U.S. Department of Justice, Office of the United States Trustee, Fresno, CA, for United States Trustee.

Matthew J. Gilbert, Sacramento, CA, for respondent Michael O'Neal, doing business as American Law Center.

## MEMORANDUM DECISION

MICHAEL S. McMANUS, Bankruptcy Judge.

The debtor filed a chapter 7 petition on April 9, 1998. Michael O'Neal, an attorney doing business as American Law Center ("re-spondent"), prepared and filed the petition for the debtor. The debtor has not yet received a discharge.

With the petition, the respondent filed a Statement Pursuant to Rule 2016(b).[1] Fed. R.Bankr.P.2016(b). This statement disclosed that the debtor promised to pay $1,000.00 for respondent's legal services in connection with the petition. Nothing was paid to respondent prior to the filing of the petition. The statement did not disclose that the respondent had received four, $250.00 post-dated checks, which were to be cashed after the filing of the petition in satisfaction of the $1,000.00 fee.

Through the respondent, the debtor paid $87.00 of the petition filing fee on April 9, 1998. The debtor agreed to pay the remaining $88.00 of the filing fee in four equal installments of $22.00 each. Even though the last installment was due on August 7, 1998, the remainder of the filing fee was paid in full on April 21, 1998.

On April 23, 1998, an order issued from this court requiring counsel for the debtor to disclose, among other things, payments made to counsel by the debtor, payments agreed to be paid to counsel by the debtor, services that counsel agreed to perform for the debtor, whether counsel had requested or received any promissory note(s) or post-dated check(s), and whether counsel had advised the debtor that any fees earned pre-petition, but not paid pre-petition, would be discharged in bankruptcy.

Counsel responded to the order and disclosed that he had received from the debtor prior to the filing of the petition four post-dated checks, each in the amount of $250.00. The checks were post-dated for April 30, 1998, May 14, 1998, May 28, 1998, and June 11, 1998.[2]

Virtually all of the services performed by respondent and his staff for the debtor were performed before the petition was filed. A

---

1. The Rule 2016(b) statement was amended on May 13, 1998, to make a minor correction. The original statement reported that respondent had received $88.00, rather than $87.00, for the filing fee.

2. This was a common business practice of the respondent. On July 10, 1998, the respondent filed a declaration indicating that the he had received and negotiated post-dated checks from debtors in 38 bankruptcy cases between January 1, 1996 and May 25, 1998.

review of the court's file and the evidence reveals no services were rendered after the filing of the petition other than attending the first meeting of creditors and dealing with a pre-petition wage garnishment.[3] The amount of time spent on pre-petition and post-petition services must be estimated because the respondent kept no contemporaneous time records.

On May 26, 1998, the court issued a second order concerning this matter. It set this hearing to determine: (1) whether the respondent had been paid an amount in excess of the reasonable value of services rendered; (2) whether any fee agreement should be canceled; (3) whether the respondent had violated the automatic stay by negotiating the post-dated checks post-petition; and (4) whether any obligation of the debtor to the respondent was discharged by the debtor's discharge.

The respondent argues that it was proper to receive payment post-petition for the services he rendered before the filing of the petition. He makes three arguments: (1) the respondent is required by the Federal Rules of Bankruptcy Procedure to accept payment post-petition; (2) the claim to fees arose post-petition and is not discharged; and (3) the claim arose pre-petition, but it is non-dischargeable even though the claim is not specifically excepted from discharge by 11 U.S.C. § 523(a).

First, the respondent argues that he is required by "court order" to accept the payment post-petition. The "court order" is actually Fed.R.Bankr.P. 1006(b)(1), which provides that a debtor may pay the petition filing fees in installments if the debtor is unable to pay the filing fee otherwise, and the debtor has "neither paid any money nor transferred any property to an attorney for services in connection with the case."

The respondent believes that Rule 1006(b)(1) places the respondent "under a direct court order only [sic] to accept compensation only *after* the balance of the filing fee had been paid." The respondent argues that the debtor would be in contempt of court had he paid the respondent prior to paying the filing fees in full. The respondent concludes that it "would be incredulous to suggest that the legislative intent behind this rule would, in one breath, order no pre-petition payment of Chapter 7 attorney fees, while, in another breath, expect those fees to be subject to other discharge provisions of the bankruptcy law."

The requirement that filing fees be paid before a debtor pays his attorney cannot be warped into an exception to discharge that compels a debtor to pay his or her attorney post-petition for pre-petition services. Such payment would violate either the automatic stay or the discharge injunction.

■ The filing of the bankruptcy petition automatically stayed any act by the respondent to collect, assess, or recover a claim against the debtor that arose before the commencement of this bankruptcy case. 11 U.S.C. § 362(a)(6). The debt owed to the respondent by the debtor for services performed pre-petition arose pre-petition. Any act to collect it, such as by presenting the post-dated checks for payment, is stayed by section 362(a).

The respondent counters that 11 U.S.C. § 362(b)(11) excepted the presentment of the post-dated checks after the filing of the petition from the automatic stay because the checks were negotiable instruments.[4] The argument is without merit.

■ The purpose of this exception to the automatic stay is not to give the holder of an instrument made by the debtor, such as a check, the right to enforce it against the debtor or the debtor's bank account after the debtor has filed a bankruptcy petition. *See Wittman v. State Farm Life Ins. Co. (In re Mills)*, 176 B.R. 924, 928 (D.Kan.1994).

---

**3.** Matthew Gilbert's declaration filed August 19, 1998, details that he spent .75 hours dealing with a wage garnishment. During argument he stated that this time was expended after the filing of the petition.

**4.** 11 U.S.C. § 362(b)(11) provides: "The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—... (11) under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument...."

Rather, "presentment of an instrument is often a prerequisite to asserting remedies against secondary obligors, such as indorsers of the instrument. This exception to the stay permits the presentment of the instrument, which may enable the holder to enforce the instrument secondarily against secondary obligors." 3 *Collier on Bankruptcy,* ¶ 362.05[11], p. 362–69 (15th Rev. Ed.1997).

This explanation of section 362(b)(11) is consistent with *Hines v. Gordon (In re Hines),* 198 B.R. 769, 772–773 (9th Cir. BAP 1996) *overruled on other grounds* 147 F.3d 1185 (9th Cir.1998); *Hessinger & Associates,* 165 B.R. 657 (Bankr.N.D.Cal.1994) *appeal dismissed by In re Eleccion,* 178 B.R. 807 (9th Cir. BAP 1995) order *aff'd by In re Hessinger & Associates,* 192 B.R. 211 (N.D.Cal.1996); and *In re Symes,* 174 B.R. 114, 118 (Bankr.D.Ariz.1994). All three of these courts rejected the use of post-dated checks to collect pre-petition fees when the checks were received pre-petition but presented post-petition.

■ Assuming for purposes of argument that the post-dated checks could be presented for payment despite the filing of the petition, then the debtor did not qualify for payment of the filing fee in installments pursuant to Rule 1006(b)(1). A debtor may not pay money or transfer any property to an attorney if he or she wishes to pay the filing fee in installments. Fed.R.Bankr.P. 1006(b)(1) & (3).

The respondent received the four post-dated checks from the debtor prior to payment in full of the filing fee. It is inconsistent to argue, on the one hand, that the post-dated checks are negotiable instruments that may be presented and paid after the filing of the petition and, on the other hand, that those same checks are not "property" for purposes of Rule 1006(b).[5]

Once the debtor obtains his chapter 7 discharge, the automatic stay will expire, but the discharge injunction will replace it. 11 U.S.C. §§ 362(c) and 524(a)(2). The debtor will be discharged from all debts that arose before the date of the order for relief and the discharge will operate as an injunction against the commencement or continuation of an action, the employment of process, or any act to collect the respondent's claim based upon his pre-petition services to the debtor. 11 U.S.C. §§ 524(a)(2) and 727(a).

The foregoing is consistent with *Hessinger v. U.S. Trustee (In re Biggar),* 110 F.3d 685 (9th Cir.1997), in which the Ninth Circuit held that a debt arising from a bankruptcy attorney's fee agreement is dischargeable in bankruptcy at least to the extent that it provides for post-petition payment for pre-petition services. Pending discharge, the automatic stay bars any such action.

■ None of the foregoing is changed by Rule 1006(b)(1). First, the scope and effect of the automatic stay and the discharge are statutory and cannot be modified by the Federal Rules of Bankruptcy Procedure. Those rules are promulgated by the Supreme Court pursuant to the authority granted it by 28 U.S.C. § 2075. Rules promulgated under this power may not abridge, enlarge, or modify any substantive right. In the event of inconsistency between a statute and a rule, the statute controls. *See* 9 *Collier on Bankruptcy,* ¶ 1001.01[1], p. 1001–2 (15th Rev. Ed.1997).

Second, the respondent's argument assumes that a debtor necessarily has the right to pay an attorney for advice, even if he or she cannot afford to pay the filing fee on the date of petition. A debtor has no such right.

The respondent next argues that the duty to pay counsel arose post-petition because there was a condition precedent, the payment of the filing fees, to the payment of counsel's fees.[6] This condition, respondent believes,

5. Were the court to conclude that presentment of the checks for payment from the debtor's account was permissible under section 362(b)(11), it would sanction counsel in an amount equal to all attorney's fees collected for his failure to disclose the receipt of the post-dated checks in his Rule 2016(b) Statement and for causing the

debtor to request an installment filing fee in violation of Rule 1006(b).

6. A variant of this argument was made during one of the preliminary hearings on this matter. The respondent argued that the filing of the petition was a condition precedent to the debtor's obligation to pay his fees. The respondent ar-

was not satisfied until after the filing of the petition, hence his claim arose post-petition. The respondent cites *Avellino & Bienes v. M. Frenville Co., Inc., et al. (In re Frenville Co., Inc.)*, 744 F.2d 332 (3rd Cir.1984) *cert. denied by M. Frenville Co., Inc. v. Avellino & Bienes*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), as support for the proposition that a pre-petition act by itself is not sufficient for a claim to arise and that the threshold requirement of a claim "must first be met-there must be a right to payment."

If the court were to accept this argument, the court would be allowing the respondent, and every other creditor whose claim arose by contract in every other bankruptcy case, to unilaterally render the anti-waiver provision of 11 U.S.C. § 524 a nullity. That section provides, in essence, that the effect of the discharge cannot be waived. By tying a debt to a condition precedent, and employing the respondent's logic, any creditor could circumvent the anti-waiver provision of section 524. For instance, a creditor could draft a contract that provides that certain penalty damages (in addition to other contract damages), be conditioned on the debtor obtaining a discharge in bankruptcy. The argument simply proves too much.

The *Frenville* court equated the accrual of a cause of action under New York law with the existence of a claim in a bankruptcy case. The court concluded that because the claimant did not incur actual damage prior to the petition he did not have a bankruptcy claim capable of discharge even though the wrongful conduct eventually causing damage occurred prior to the filing of the petition.

This decision has been criticized on the ground that it confuses the accrual of a cause of action under state law with the existence of a claim for purposes of a bankruptcy case. *Jensen v. Calif. Dept. of Health Services (In re Jensen)*, 127 B.R. 27, 30–31 (9th Cir. BAP 1991) aff'd. 995 F.2d 925 (9th Cir.1993); *In re Symes*, 174 B.R. at 118.

Given the broad definition of "claim" at 11 U.S.C. § 101(5), the court must conclude a fee for services rendered pre-petition is a claim subject to discharge even if the obligation to pay the fee is conditional. Pursuant to section 101(5)(A), a claim includes any right to payment whether unliquidated, contingent, or unmatured.

Nothing in *Gordon v. Hines (In re Hines)*, 147 F.3d 1185 (9th Cir.1998), changes this conclusion. In *Hines* the court held, among other things, that a pre-petition contract for post-petition legal services does not give the attorney a "claim" within the meaning of section 101(5)(A). It is the rendition of services that creates the claim, not the execution of a fee agreement. Therefore, if post-petition services are rendered, the attorney does not have a pre-petition (hence dischargeable) claim. The attorney may collect his or her fee after the filing of the petition without running afoul of the automatic stay or the discharge injunction.

Here, the services were rendered almost entirely before the filing of the petition. These services included meeting with the debtor and preparing the petition, schedules, and statement financial of affairs. Because the debtor did not pay for these services prior to filing the petition, the respondent held a pre-petition claim that was dischargeable in bankruptcy.

The respondent nevertheless asserts that Congress intended this pre-petition claim "to be a non-dischargeable debt in that B.R. 1006 specifically on its face demands only post-petition receipt of attorney fees." The respondent argues that under the circumstances of this case, there is, in essence, an unwritten paragraph in section 523(a) that provides for the nondischargeability of this debt.

The court disagrees. If Congress intended that such an exception to discharge exist, it would have enacted an appropriate law. It would not have relied upon the Supreme Court's ability to divine Congress' collective mind and then draft a rule to implement the Congressional will.

The respondent believes the rule announced in *In re Hines* is to the contrary.

---

gued that unless a petition was filed, he could not enforce his claim for fees against the debtor. This same argument was made by a debtor's attorney in *In re Symes*, 174 B.R. at 117–118. The court adopts the reasoning of the bankruptcy court in *Symes* and rejects this argument.

As noted above, in *Hines* the Ninth Circuit held that the post-petition rendition of legal services promised in a fee agreement executed pre-petition entitles the attorney to recover the fees for the post-petition services from the debtor without violating the automatic stay or the discharge injunction.

The court in *Hines* reached this result, in part, by crafting a judicial exception to the provisions of sections 362(a)(6) and 727. The court held:

> "[A]ttorneys for Chapter 7 debtors must have a legally enforceable right for their postpetition services that were contracted for before the filing of the petition. If the absence of such a right were to become the law, ... the entire system would suffer a massive breakdown. In our view the required recognition of such a right ... is best implemented by holding that all claims for lawyers' compensation *stemming from such postpetition services actually provided to the debtor* really do not fall with the automatic stay provisions of Section 362(a)(6) or the discharge provisions of Section 727." (Emphasis added.)

*In re Hines*, 147 F.3d at 1191. The respondent interprets *Hines* to mean that post-petition payment for services rendered pre-petition pursuant to a pre-petition contract are nondischargeable and collection of such fees does not violate the automatic stay or the discharge injunction. The respondent's interpretation of *Hines* is simply wrong. *Hines* holds only that the post-petition payment for services rendered post-petition is permissible even though the parties contract for those services prior to the filing of the petition. Nothing in *Hines* permits post-petition payment for services rendered pre-petition. This would be directly contrary to *Hessinger v. U.S. Trustee (In re Biggar)*, 110 F.3d 685 (9th Cir.1997).

■ Having concluded that all fees were paid after the filing of the petition and that all fees owed for pre-petition services are dischargeable in bankruptcy, it remains to order the disgorgement of all fees collected for pre-petition services. Before this can be done, however, the court must determine the reasonable value of the services rendered post-petition. Fees for these services may be retained by counsel.

As noted above, the respondent has not submitted any contemporaneous time records or any other comparable evidence documenting the tasks undertaken or the time spent in connection with the debtor's chapter 7 bankruptcy.

It appears from a review of the court's file that this was a simple, straightforward consumer chapter 7 petition. The debtor did not own any real property or vehicles. His total assets were valued at $3,790.00 and were all exempt. There were no secured creditors but there were 25 creditors with priority and general unsecured claims totaling $20,990.32. The priority claims were for state and federal income taxes totaling $4,775.00.

The sole complication presented by the debtor's case was a pre-petition wage garnishment. This problem was apparently solved by serving a copy of the petition on the levying officer and/or the creditor. An attorney spent .75 hours to resolve the matter.

The petition, schedules, and statement of financial affairs were the only documents prepared by the respondent for the benefit of the debtor. All other pleadings and documents relate to the respondent's attorney's fees. The court's file does not contain any reaffirmation agreements, motions to avoid liens pursuant to 11 U.S.C. § 522(f), motions for relief from the automatic stay, or any other motion or proceeding implicating the rights of the debtor.

It is difficult to believe that the collection of information for, and the preparation of, the petition, schedules, and statement of financial affairs could have taken more than 3.75 hours even with the time pressures created by a garnishment of the debtor's wages.[7] Because these documents were all

---

7. This takes account of the estimated 1.50 hours spent by attorney Matthew Gilbert reviewing the petition and meeting with the debtor, as well as time spent by Michael O'Neal on substantive matters unrelated to his fees. The court has not considered another .50 hours of his time that was spent amending the Rule 2016(b) statement to

filed on April 9, 1998, it is clear that services related to their preparation and filing occurred pre-petition.

The only services rendered post-petition were related to appearing at the first meeting of creditors and dealing with a wage garnishment. Calendars for meeting of creditors are set at 30 minute intervals. Further, cases are "batched" so debtors' attorneys have several of their cases heard during the same calendar. On August 24, 1998, the respondent filed the declaration of Carl Mayhew. It contains Mr. Mayhew's estimate that it took him 1.50 hours to travel to Modesto, one-quarter of an hour to attend the debtor's first meeting on May 14, 1998, at 9:30 a.m., and 1.50 hours to return to Sacramento. However, the court's records reveal that the respondent appeared for two first meetings at 9:30 a.m. (this case and Case No. 98–91651) and two at 10:00 a.m. (Case Nos. 98–91653 and 98–91677). If the travel time is prorated among these cases, .75 hours would be allocable to this case.[8]

■ Fees charged by attorneys for representation of debtors in consumer chapter 7 cases, excluding representation in adversary proceedings, in the Modesto Division range from a low of $400.00 to a high of $1,500.00. Fees in consumer Chapter 7 cases are generally quoted and paid on a "flat rate" basis. Given the minimal work required in this case (not considering any time related to the challenge to the respondent's fees) and its lack of any factual or legal complexity, the court finds that $750.00 is reasonable compensation.

■ Viewed on an hourly basis, this works out to approximately $135.00 per hour.[9] This "blended" rate, given the considerable use the respondent made of paralegals to gather information and prepare forms, is more than fair. Admittedly, use of an hourly rate is artificial given that fees for consumer chapter 7 cases in this locale are usually not charged on a hourly basis but on a flat fee basis. The court has calculated an hourly rate only to prorate the reasonable flat fee in this case, $750.00, between pre-petition and post-petition work.

Of the $750.00, the court finds that $511.35 is attributable to services rendered pre-petition. The remainder, $238.65, is attributable to service rendered post-petition.

■ The United States Trustee argues that all fees should be disallowed and the respondent assessed damages because: (1) the debtor received no advice from Mr. O'Neal, prior to the debtor's decision to seek relief under chapter 7; (2) the debtor's first and only meeting with Mr. O'Neal occurred three months after the debtor's first contact with American Law Center; (3) non-attorneys did most of the work and consulted with the debtor and gave the debtor advice; and (4) Mr. O'Neal met with the debtor only after the schedules were completed.

The court rejects these arguments. The respondent used paralegals to gather information and to prepare the petition. These paralegals are employed by the respondent who is a licensed California attorney. The respondent and another attorney reviewed the work of the paralegals. Before entering into a written contract to represent a debtor, the respondent or an attorney employed by him met with the debtor. Before the petition and other documents were filed, an attorney spoke with the debtor and reviewed the bankruptcy documents. This satisfied the

---

correct a $1.00 typographical error. *See* footnote 1, *supra.*

**8.** Because counsel accepted the debtor's representation for a flat fee and appeared on more than one first meeting during his trip to Modesto on May 14, 1998, for purposes of the computation of reasonable compensation, the court departed from its normal practice and permitted travel time to be compensated at the estimated full hourly rate rather than at half that rate. *See* Guidelines Pertaining to Requests for Compensation and Expense by Professional in Eastern District of California Cases.

**9.** The respondent and his staff spent an estimated 5.50 hours on this case: 3.75 pre-petition hours to prepare the petition, schedules, and statement of financial affairs; .75 post-petition hours to deal with the garnishment; and 1.00 post-petition hour to attend the first meeting of creditors. $750.00 ÷ 5.50 estimated hours = $136.36 per hour. Therefore, $511.35 of the $750.00 relates to pre-petition services and $228.65 relates to post-petition services.

**132**

respondent's obligations under Cal. Rule of Professional Conduct 3–110.[10] The court finds the assertion that the respondent allowed his paralegal staff to practice law in connection with this case to be without merit.

Therefore, an order will issue with the following provisions:

1. Pursuant to 11 U.S.C. § 329(b), the court determines that $750.00 is the reasonable value of all services rendered by the respondent to the debtor in contemplation of or in connection with the debtor's petition.

2. Of this amount, $511.35 relates to services rendered pre-petition by respondent to the debtor in contemplation of or in connection with the debtor's petition.

3. The $511.35 was not paid to the respondent prior to the filing of the petition. The respondent is, therefore, automatically stayed by 11 U.S.C. § 362(a) from collecting such sum during the pendency of the case.

4. If the debtor receives a chapter 7 discharge, the respondent's right to payment of the $511.35 shall be discharged in bankruptcy.

5. To the extent the respondent was paid, whether by negotiating the post-dated checks or otherwise, he may retain $238.65 on account of work performed post-petition. The balance of any money shall be refunded to the person paying the fees within 10 days of the date an order in this matter. Proof of the repayment shall be served upon the United States Trustee within 5 days of the repayment.

6. To the extent the respondent continues to hold post-dated checks received as compensation in connection with or in contemplation of the filing of the debtor's petition, the checks shall be returned to the drawer(s) within 10 days of the date of an order on this matter. Proof of the return shall be served

upon the United States Trustee within 5 days of the return. Provided, however, if none of the checks have been negotiated, one (1) may be negotiated. When the check is honored, the respondent may retain $238.65 but he must refund the balance to the drawer within 10 days of receipt of the funds. Proof of the repayment shall be served upon the United States Trustee within 5 days of the repayment.

10. Cal. Rule of Prof. Conduct 3–110 provides:
(A) A member shall not intentionally, recklessly, or repeatedly fail to perform legal services with competence.
(B) For purposes of this rule, "competence" in any legal service shall mean to apply the 1) diligence, 2) learning and skill, 3) mental, emotional, and physical ability reasonably necessary for the performance of such service.

(C) If a member does not have sufficient learning and skill when the legal service is undertaken, the member may nonetheless perform such services competently by 1) associating with or, where appropriate, professionally consulting another lawyer reasonably believed to be competent, or 2) by acquiring sufficient learning and skill before performance is required.