**In re Albert BETHEA, Debtor.**

**Albert Bethea, on behalf of himself and all others similarly situated, Plaintiff,**

**v.**

**Robert J. Adams & Associates, Defendant.**

**In re Cort Chubko, Debtor.**

**Cort Chubko, on behalf of himself and all others similarly situated, Plaintiff,**

**v.**

**Law Offices of Melvin James Kaplan, Defendant.**

**In re Nathaniel Beard, Jr., Debtor.**

**Nathaniel Beard, Jr., on behalf of himself and all others similarly situated, Plaintiff,**

**v.**

**Zalutsky & Pinski, Ltd., Defendant.**

**Bankruptcy Nos. 99 B 13557, 99 B 34885, 98 B 006516. Adversary Nos. 01 A 00187, 01 A 00196, 01 A 00197.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 29, 2002.

Robert J. Adams, Robert J. Adams & Associates, Chicago, IL, for Debtors.

Allan J. Demars, Spiegel & Demars, Chicago, IL, trustee.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

The Seventh Circuit Court of Appeals has instructed that the proper construction of statutes requires regard for context. "When context is disregarded, silliness results." *In re Handy Andy Improvement Centers,* 144 F.3d, 1125, 1128 (7th Cir. 1998). If ever a case proved the point, this one is it.

The plaintiffs (the "Debtors") in these three adversary proceedings were debtors in cases under chapter 7 of the Bankruptcy Code. They are suing the law firms that

represented them in these chapter 7 cases. On behalf of themselves and all similarly situated chapter 7 debtors, they accuse their erstwhile attorneys of violations of the automatic stay and the discharge injunction and of professional negligence. The lawyers' allegedly unlawful conduct consisted of collecting agreed fees after the bankruptcy cases were filed. The defendants (the "Law Firms") have moved to dismiss the Second Amended Class Action Complaint for failing to state a claim on which the law will grant relief.

## I. Factual Background Presented in Complaint

Each of the Debtors retained his respective Law Firm to prepare and file a bankruptcy petition under chapter 7 of the U.S. Bankruptcy Code, and those petitions were filed. Before the petition filings, though, the Debtors signed standard form retainer agreements requiring them to pay the Law Firms' initial fees of $1625, $1200, and $900 in monthly installments. The Debtors do not allege that those fees were unreasonable or that the defendant Law Firms did not earn them. In accordance with the terms of these agreements, the Law Firms deducted monthly payments from the Debtors' bank accounts for the legal services they performed preceding the orders for relief. The Law Firms deducted installments while the chapter 7 bankruptcy cases were pending and after the Debtors received their discharges.

## II. Jurisdiction

 The U.S. District Court for the Northern District of Illinois has jurisdiction to render a final judgment according to 28 U.S.C. § 1334(b) in matters arising under sections 362(a), 524(a)(2), and 727(b) of the U.S. Bankruptcy Code. This matter is before this Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and Internal Operating Procedure 15(a) of the U.S. District Court for the Northern District of Illinois, which automatically refers bankruptcy cases and proceedings to this Court for determination. A proceeding to prosecute a violation of the discharge injunction or the automatic stay is a core proceeding. *See In re Barbour,* 77 B.R. 530, 532 (Bankr.E.D.N.C.1987); *In re Elegant Concepts, Ltd.,* 67 B.R. 914, 917 (Bankr. E.D.N.Y.1986). Whenever core matters predominate over a non-core count, such as the statelaw professional negligence cause of action, the Court may determine that the entire proceeding is a core proceeding. *See Blackman v. Seton (In re Blackman),* 55 B.R. 437, 443 (Bankr. D.D.C.1985). These proceedings are therefore within the core jurisdiction of this Court, which will enter a final judgment.

## III. Discussion and Analysis

 The issue in this case concerns claims arising from a prepetition retainer agreement between a chapter 7 debtor and his bankruptcy counsel. The plaintiffs would have such claims treated just like any other prepetition claim under the Bankruptcy Code. The Debtors' analysis is supported by the majority of courts having considered the question. *See Hessinger & Associates v. U.S. Trustee (In re Biggar),* 110 F.3d 685 (9th Cir.1997); *In re Nieves,* 246 B.R. 866 (Bankr.E.D.Wis.2000); *In re Toms,* 229 B.R. 646 (Bankr.E.D.Pa.1999); *In re Jastrem,* 224 B.R. 125 (Bankr. E.D.Cal.1998); *In re Voglio,* 191 B.R. 420 (D.Ariz.1996); *In re Symes,* 174 B.R. 114 (Bankr.D.Ariz.1994). Only one opinion that is still viable law takes a contrary position. *See In re Perry,* 225 B.R. 497 (Bankr.D.Colo.1998); *see also In re Mills,* 170 B.R. 404 (Bankr.D.Ariz.1994) (implicitly overruled by *Biggar* ).

 The minority-view cases express the concern that subjecting chapter 7 debtors' attorneys to the restrictions applicable

to other claims will deprive the most indigent of the opportunity to obtain legal representation, because they will not be able to pay their entire legal bills before their petitions are filed. *See id.* at 410. However valid that policy concern may be, the majority-view courts are correct that policy is Congress's territory; courts ought not create exceptions to the automatic stay and the discharge injunction that Congress has not put there. *See In re Biggar,* 110 F.3d at 688; *In re Nieves,* 246 B.R. at 872–73; *In re Jastrem,* 224 B.R. at 129; *In re Symes,* 174 B.R. at 117; Joshua D. Morse, Comment, *Public Policy Is Never a Substitute for Statutory Clarity: Rejecting the Notion That Pre Petition Attorney Fee Debts Are Nondischargeable in Chapter 7 Bankruptcies,* 40 Santa Clara L.Rev. 575, 606 (2000). These authorities focus narrowly on the language of the automatic stay and discharge sections of the Bankruptcy Code, which they find both clear and applicable. *See Biggar,* 110 F.3d at 688; *Symes,* 174 B.R. at 117, 119.

Section 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." Section 727(b) "discharges the debtor from all debts that arose before the date of the order for relief … whether or not a proof of claim based on any such debt or liability is filed under section 501 … and whether or not a claim based on any such debt or liability is allowed under section 502." Once a bankruptcy court grants the discharge, § 524(a)(2) "operates as an injunction against the commencement or continuation of an act[ ] to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." Nothing in the exceptions to discharge listed in § 523(a) excludes from discharge a prepetition debt for attorneys' fees incurred in the prosecution of the bankruptcy case.

This Court, however, rejects the majority view. That rejection is not grounded on this Court's policy preferences; rather, it is based on Congress's policy preferences. By slavishly applying the terms of a few sections of the Code, the majority-view courts have misapplied the plain meaning rule and directly violated the rules of statutory construction that higher courts mandate this Court to follow. Put simply, the majority-view courts have misread the statute.

 As the Debtors rightly urge, statutory construction must begin with the language of the statute itself. *See Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (main holding superceded by statute). Even when the provision at issue conflicts with no other provision in the Bankruptcy Code, however, the Supreme Court has recognized that the text is merely the starting point and that a federal court "must not be guided by a single sentence or member of a sentence [but must] look to the provisions of the whole law[ ] and to its object and policy."[1] *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Thus, the Court has been reluctant to interpret one section of the Code so that another one is surplusage or insignificant, *Davenport,* 495 U.S. at 562, 110 S.Ct. 2126, and it has directed that a statute "cannot be held to destroy itself." *Citizens Bank*

---

**1.** In *Kelly v. Robinson,* the Supreme Court did not find that the exception to discharge at issue, § 523(a)(7), was in conflict with any other provision in the Bankruptcy Code, but it still examined the Code's legislative history and the case law under the 1898 Bankruptcy Act in depth.

*of Maryland v. Strumpf,* 516 U.S. 16, 20, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

 Significantly for present purposes, "[w]here two statutes deal with the same subject matter, they are to be read in *pari materia* and harmonized when possible." *In re Johnson,* 787 F.2d 1179, 1181 (7th Cir.1986). Equally significantly, "a specific statute takes precedence over a more general statute." *Id.* (citing *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) (main holding superceded by statute)). Once an entire statute has been properly considered, if "congressional intent is clear, [the court's] sole function is to enforce the statute according to its terms." *Davenport,* 495 U.S. at 564, 110 S.Ct. 2126; *see Dewsnup v. Timm,* 502 U.S. 410, 419–20, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

 The fallacy in the Debtors' position is that congressional intent must never be found by reading the language, however plain, of sections of a statute in isolation from either the rest of the statute or the purposes the statute was enacted to fulfill. A court must discern congressional intent by looking "to the provisions of the whole law[ ] and to its object and policy." *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). In this circuit, courts that myopically read statutory provisions without regard to context are violating the principles spelled out in *In re Handy Andy Home Improvement Centers,* 144 F.3d 1125, 1128 (7th Cir. 1998):

> Statutory language like other language should be read in context. *Textron Lycoming Reciprocating Engine Division v. United Automobile, Aerospace & Agricultural Implement Workers,* 523 U.S. 653, 118 S.Ct. 1626, 1629, 140 L.Ed.2d 863, (1998); *Sundstrand Corp. v. Commissioner,* 17 F.3d 965, 967 (7th Cir. 1994); *Bell Atlantic Tel. Cos. v. FCC,* 131 F.3d 1044, 1047 (D.C.Cir.1997). The context consists not merely of other sentences but also of the real-world situation to which the language pertains.... When context is disregarded, silliness results.

These proceedings concern the relationship between bankruptcy debtors and their attorneys. Congress wrote a series of sections into the Bankruptcy Code, §§ 327–331, to specifically regulate the relationship between debtors (and trustees and chapter 11 statutory committees) and attorneys (and other professionals). One of those sections deals specifically with the relationship between attorneys and clients in chapter 7 cases, § 329.[2] The code sections on which the plaintiffs rely are in tension with that section. Section 329(a) (emphasis added) requires a debtor's attorney to file "a statement of the compensation ... *agreed to be paid,*" and § 329(b) requires a bankruptcy court to scrutinize that agreement, whether or not the attorney applies for compensation under § 330(a). If the agreed fees exceed the

---

**2.** "(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation. (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to (1) the estate, if the property transferred (A) would have been property of the estate; or (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or (2) the entity that made such payment."

reasonable value of the legal services provided, this section authorizes two remedies: the court may order the return of any payments that have already been made, or it may cancel the agreement to the extent excessive.

Congress therefore explicitly contemplated that there will be some instances in which the debtor will have already paid all the fees related to the case before the case is commenced, and there will be other instances in which the debtor will not have paid all the fees but will have agreed to pay some part after the case is commenced. The plaintiffs' theory, however, would render those provisions as applied to chapter 7 debtors largely nugatory. The remedy for excessive fees to be paid in the future would be unnecessary if collection of those fees is subject to the automatic stay and the obligation is then permanently extinguished by the discharge. Similarly, Federal Rule of Bankruptcy Procedure 2017(b) would be nullified in chapter 7 cases by a literal reading of sections 362(a), 524(a)(2), and 727(b), because it permits a court to determine whether an *agreement for* "any payment of money ... by the debtor to an attorney after entry of an order for relief ... is excessive ... if the payment, transfer, or agreement therefor is for services in any way related to the case." Such a review would be a waste of time if the payment due could not be legally collected after the order for relief and the discharge. Further, canceling the unreasonable portion of a fee contract under § 329 would not serve

to protect the estate from an excessive claim because § 502(b)(4) already authorizes disallowance of a claim for attorneys fees to the extent the amount is unreasonable.[3] Therefore, under the Debtors' theory, § 329(b) would serve no purpose in chapter 7 cases as applied to "compensation ... agreed to be paid."

The majority-view courts have attempted to address the tension between §§ 362(a), 524(a)(2), and 727(b), on the one hand, and § 329, on the other, by searching for situations in which § 329 might not be rendered superfluous and the statutory scheme might not be rendered incoherent and inconsistent. Those courts and the Debtors suggest that § 329 continues to apply to all cases under chapters 11, 12, and 13; in chapter 7 cases, it also continues to apply to postpetition reaffirmation agreements between debtors and their bankruptcy attorneys. *See In re Nieves,* 246 B.R. 866, 872–73 (Bankr.E.D.Wis. 2000); *In re Symes,* 174 B.R. 114, 118 (Bankr.D.Ariz.1994). Consequently, the majority-view courts conclude that § 329 can harmoniously coexist with a literal application of the other four provisions. *See id.* Unfortunately, the majority position ignores §§ 103(a) and 524(c).

First, § 103(a) mandates that "chapters 1, *3,* and 5 of this title apply in a case under chapter *7,* 11, 12, or 13 of this title." When Congress intended that a provision in chapter 3 not be applied in either chapter 7, 11, 12, or 13, Congress simply said so.[4] Yet nothing in § 329 excludes its

---

**3.** Section 502 deals with the allowance of claims against the estate, not claims against the debtor. Section 502 only has relevance when there is a distribution from estate assets to creditors. Claims against the debtor are dealt with in the discharge provisions of §§ 523, 524, and 727. The point here is that under the plaintiffs' theory, § 329 would protect neither the estate nor the debtor.

**4.** *See, e.g.,* § 326(a), (b) (limits on trustee compensation); § 327(c) (disqualification of professional persons representing a creditor); § 330(a)(4)(B) (compensation from estate to attorney representing debtors' interests); § 341(d) (specific type of oral examination for a debtor by trustee); § 346(b), (d), (g), (i) (special tax provisions); § 347(a), (b) (disposition of unclaimed property); § 365(d), (*o*) (as-

application to fee agreements in chapter 7 cases. Therefore, § 329 in its entirety ought to be applicable in chapter 7 cases; otherwise, § 103(a) itself would not be given full effect.

Second, reaffirmation agreements with chapter 7 debtors' attorneys pursuant to § 524(c) do not, as the majority position contends, create instances in which § 329(b) has any *meaningful* use in chapter 7 cases. Under § 524(c)(3)(B), the agreement may not "impose an undue hardship on the debtor or a dependent of the debtor." Additionally, § 524(c)(6)(A)(ii) prescribes that a court may only approve such an agreement if it is in the "best interest of the debtor," at least if the debtor is "an individual who was not represented by an attorney during the course of negotiating [a reaffirmation] agreement." Due to the obvious conflict of interest, the chapter 7 debtor's attorney will not be able to represent the debtor during the negotiation, *see Gordon v. Hines (In re Hines)*, 147 F.3d 1185, 1190 (9th Cir.1998); *In re Perry*, 225 B.R. 497, 500 (Bankr.D.Colo.1998); *Model Rules of Prof'l Conduct* R. 1.7(b), 1.8(a)-(c) (2001), and as a practical matter a debtor who cannot pay his first attorney immediately will almost never be able to hire a second to represent him during such negotiations.[5] Therefore, the chapter 7 debtor will be unrepresented in virtually every situation, and the agreement will necessarily be required to meet the "best interest of the debtor" standard. If an agreement is valid because it does not impose an *undue* hardship on a debtor and is in his best interest, it will never require the debtor to pay for more than the reasonable value of the legal services to which he is entitled under the prepetition contract. Satisfaction of these two standards contained in § 524(c) itself, then, would make it unnecessary to apply § 329(b) to reaffirmation in chapter 7 cases.

The Ninth Circuit's attempt to resolve the tension between § 329(b) and sections 362(a), 524(a)(2), and 727(b) in *Gordon v. Hines (In re Hines)*, 147 F.3d 1185 (9th Cir.1998), creates another inconsistency. *Hines* held that a chapter 7 debtor's liability on a prepetition contract with bankruptcy counsel is bifurcated into liability for prepetition services and liability for postpetition services; the attorney's prepetition services create a prepetition claim subject to the automatic stay and the discharge injunction, *see id.* at 1188, while his postpetition services rendered pursuant to the prepetition agreement create quasicontractual liability not subject to either of these restrictions, *see id.* at 1191.

*Hines* represents a noble effort to avoid the absurd result that otherwise would have followed from treating bankruptcy counsel's retainer agreement like any other prepetition agreement. Unfortunately, the effort fails because a single contract gives rise to one claim, not two. "Claim" is defined in § 101(5) as "right to payment, whether or not such right is ... fixed, contingent, matured [or] unmatured...." The Supreme Court, following the plain-meaning rule of statutory construction, has told us that "[t]he plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation." *Davenport*, 495 U.S. at 559, 110 S.Ct. 2126. "In accordance with this principle, contract-based claims arise at the time the contract is entered into, rather than upon the occurrence of subsequent events such as termi-

sumption and rejection of executory contracts and unexpired leases).

5. Under the majority rule, the chapter 7 debtor's ability to retain the first law firm for the purpose of carrying out the bankruptcy case in its entirety is already uncertain.

nation." *In re Caldor, Inc.—NY,* 240 B.R. 180, 192 (Bankr.S.D.N.Y.1999). "The fact [that a] creditor may hold a contingent right to payment[6] until filing the petition does not mean counsel holds a post-petition claim." *In re Symes,* 174 B.R. 114, 118 (Bankr.D.Ariz.1994) (a majority-position case). Consistent with the general rule, the Seventh Circuit has held that a creditor who performed services after the petition was filed held a prepetition claim, rather than a post petition administrative expense claim, because "the agreement among the parties was entered into ... before the petition was filed." *In re Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984); *see also Pension Benefit Guaranty Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.),* 126 F.3d 811, 818–19 (6th Cir.1997). The enforceable obligation to pay the Law Firms' fees arose when the Debtors signed the agreements, not later.

In the Ninth Circuit, however, following *Hines,*

> a prepetition contract for postpetition legal services does not give the attorney a 'claim' within the meaning of section 101(5)(A). It is the rendition of services that creates the claim, not the execution of a fee agreement. Therefore, if postpetition services are rendered, the attorney does not have a prepetition (hence dischargeable) claim. The attorney may collect his or her fee after the filing of the petition without running afoul of the automatic stay or the discharge injunction.

*In re Jastrem,* 224 B.R. 125, 129 (Bankr. E.D.Cal.1998). *Hines,* in effect, carves out a special category for retainer agreements in order to get them away from the operation of the "plain meaning" of the automatic stay and discharge sections of the Code,

but in so doing, the court plays havoc with the plain meaning of § 101(5).

*Hines* was correct in one respect: it was right to treat fee agreements with bankruptcy counsel differently than other agreements. *Hines'* defect is in its reason for doing so. The real reason that courts must treat such fee agreements as a special category is because Congress has mandated us to do so. That mandate is in § 329. Courts cannot apply that section according to its terms if the very agreements it regulates are already disposed of by the automatic stay and discharge provisions. Therefore, fulfilling congressional intent requires judicial recognition that Congress intended that agreements within the scope of § 329 be outside the scope of §§ 362, 524, and 727.

The Debtors, however, insist that the plain-meaning rule in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), requires the result they seek. In fact, their argument is not an application of the plain-meaning rule; their argument is a parody of the plain-meaning rule. The plain-meaning rule declared by the Supreme Court in *Ron Pair* only states that when the language of the Code is sufficiently precise to discern congressional intent, a court's sole function is to enforce it according to its terms without reference to legislative history or pre-Code practice. *See id.* at 241, 245–46, 109 S.Ct. 1026; *see also Pittway Corp. v. United States,* 102 F.3d 932, 934–35 (7th Cir.1996). *Ron Pair,* however, did not sanction construing the words—even the plain words—of one section of a statute in a way that makes another section surplusage, destroys the coherence of the statutory scheme, or

---

**6.** The claim is contingent on the amount of legal services that will be required postpetition.

leads to results that common sense tells us Congress never intended. To the contrary, *Ron Pair* itself declared:

> The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). In such cases, the intention of the drafters, rather than the strict language, controls. *Id.* It is clear that allowing postpetition interest on nonconsensual oversecured liens does not contravene the intent of the framers of the Code. Allowing such interest does not conflict with any other section of the Code, or with any important state or federal interest.... Respondent has not articulated, nor can we discern, any significant reason why Congress would have intended, or any policy reason would compel, that the two types of secured claims be treated differently in allowing post-petition interest.

*Ron Pair*, 489 U.S. at 242–43, 109 S.Ct. 1026.

██ In this case, in contrast, literal application of the automatic stay and discharge provisions will contravene the intent of the framers because it will conflict with another section of the Code, § 329, and with important federal interests, including the interest in equal access to the courts and the efficient operation of the bankruptcy system. And it is self-evident why Congress would have intended that installment-fee agreements with bankruptcy counsel not be subject to the automatic stay or the discharge provisions. Chapter 7 is intended to afford relief to financially distressed debtors. A debt incurred to the debtor's bankruptcy counsel does not add to the debtor's distress; rather, it is the means by which the debtor may obtain relief from that distress. The automatic stay and discharge are intended to benefit debtors; the plaintiffs' construction impairs the debtors' ability to get those very benefits. And nobody, including the Debtors, could seriously contend that the drafters of the 1978 Code intended to discriminate against the most impecunious would-be debtors and to create an instant conflict of interest between them and their attorneys. In short, the plain meaning rule does not require naive literalism; rather, that rule prohibits such literalism because it requires a consideration of context and purpose. Proper application of the rule here requires dismissal of the complaint.

Higher courts have not hesitated to harmonize seemingly conflicting Code provisions by restricting the reach of language that otherwise was plain. In *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20–21, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), the Supreme Court narrowed the scope of § 362(a)(7) in order to preserve the right of a creditor to offset a mutual debt in § 553(a). In *In re Duke*, 79 F.3d 43, 45 (7th Cir.1996), the Seventh Circuit limited the reach of § 362(a)(6)'s literal terms in order to meaningfully preserve the right of a prepetition creditor to communicate a reaffirmation offer to a debtor under § 524(c). In *Zerand–Bernal Group, Inc., v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994), the court refused to apply 28 U.S.C. § 1334 according to its "full breadth" because doing so would extend bankruptcy jurisdiction beyond the intent and purpose of that section. Similarly, in this case, this Court reads sections 362(a)(6), 727(b), and 524(a)(2) in a manner that will preserve the right that § 329(b) implicitly, but necessarily, grants to chapter 7 debtors and their attorneys to agree to the payment of fees after the order for relief.

The history of § 329(b) also supports this Court's interpretation. Congress de-

rived § 329 from a provision that was different from other sections generally applying to creditors. Section 329(b) was derived directly from former Bankruptcy Rule 220, which in turn had been derived from § 60(d) of the 1898 Bankruptcy Act. *See* 3 *Collier on Bankruptcy* ¶ 329.LH[1]-[4], at 329–30 to –31 (Lawrence P. King ed., 15th ed.1996). Originally, § 60(d)[7] did not provide a basis for a court to scrutinize an agreement for future payments; it only permitted it to cancel the unreasonable portion of a payment that the bankrupt had already made to the attorney he employed for prepetition bankruptcy services.[8] *See Michelbacher v. Haar (In re Falk)*, 30 F.2d 607, 609 (2nd Cir.1929). In most respects, however, it is substantially similar to § 329(b), so cases interpreting § 60(d) shed some light on § 329(b)'s special character. *See In re Smith*, 48 B.R. 375, 378 (Bankr. C.D.Ill.1984). Early on, the Supreme Court explicitly recognized that § 60(d) was both administrative in character and *sui generis;* therefore, a trustee's suit to recover excessive payments to a bankruptcy counsel did not require the procedures necessary for a plenary suit to recover a preference. *See In re Wood*, 210 U.S. 246, 250–54, 257–58, 28 S.Ct. 621, 52 L.Ed. 1046 (1908). Similarly, the Second Circuit recognized that

> [t]he object of section 60(d) was to afford the bankrupt representation by

counsel, *who would not have to take chances as a general creditor,* but might know that a reasonable fee was assured, and hence would be zealous to render active service in what is often a difficult situation.

*Michelbacher,* 30 F.2d at 609 (emphasis added). Thus, even before the enactment of the Code, courts recognized that employment contracts with debtors' attorneys do not fit comfortably within the scheme designed to regulate payments to general creditors, because the agreement between a debtor and his counsel is fundamental to the success of the bankruptcy case itself and is thus qualitatively different. Because Congress said nothing to indicate it intended to change prior law, § 329(b), like its direct predecessor, § 60(d), ought to be considered a discrete, exclusive regulation of such fee agreements. "When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

Moreover, § 329 is a specific rule applicable to fee agreements of the kind at issue here. "A general statutory rule usually does not govern unless there is no more specific rule." *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 524, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989). The Code sets forth a very specific set of rules, § 327 through § 331, regulating relationships with professionals employed in con-

---

**7.** "If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law ... for services to be rendered, the transaction shall be re-examined by the court on the petition of the trustee or any creditor, and shall only be held valid [i.e., not a preference under § 60(a)] to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate." Act to Establish a Uniform System of Bankruptcy Throughout the United

States, ch. 541, § 60(d), 30 Stat. 544, 562 (1898) (repealed 1978).

**8.** Congress amended § 60(d) in 1968 to give the court authority to review the compensation for all services that the debtor's attorney agrees to render in connection with the bankruptcy case. *See* Lester Brickman & Jonathan Klein, *The Use of Advance Fee Attorney Retainer Agreements in Bankruptcy: Another Special Law for Lawyers?,* 43 S.C. L.Rev. 1037, 1055 & n. 87 (1992).

nection with a bankruptcy case. These provisions contemplate that attorneys will be involved with bankruptcy cases in numerous capacities, including representation of a trustee in carrying out statutory duties (§ 327(a), § 330(a)(1), § 331); of a creditor's committee (§ 1103(a), § 330(a)(1), § 331); of a trustee in operating a debtor's business (§ 327(b), § 330(a)(1), § 331); of a debtor in defending the debtor's legal rights (§ 329, § 330(a)(4)(B), § 331); and of a trustee in utilizing a former debtor's attorney for a special nonbankruptcy purpose (§ 327(e), § 330(a)(1), § 331). These specialized rules trump the more generally applicable rules found in sections 362(a), 524(a)(2), and 727(b). The requirements for compensation in these rules do vary, usually requiring a retention order from the court and a detailed fee application, but as a whole they imply that the attorney *will receive* reasonable compensation if he complies with them. Attorneys employed by debtors under chapters 11, 12 or 13 do not confront the issue raised in this case because they are entitled to apply to the court for the approval of their compensation and to have that compensation paid by the estate as priority claims. §§ 330(a), 503(b)(2), 507(a)(1). Section 329, which is part of this series of rules governing professional employment and compensation, affords attorneys who represent debtors in chapter 7 cases comparable protection and imposes comparable burdens. But the mechanism provided in § 329 fails to achieve its purpose if sections 362(a), 524(a)(2), and 727(b) are held to cover the same ground. This is why the specific must prevail over the general.

For the two decades since the enactment of the Bankruptcy Code, courts have assumed that a chapter 7 debtor's attorney could collect fees from non–state property. Though not specifically addressing the precise issue presented in this case or the interaction of these sections with sections 362(a), 524(a)(2), and 727(b), numerous courts have clearly evidenced an understanding that for those services not compensable under § 330(a), liability under the prepetition contract between a chapter 7 debtor and his attorney continues postpetition and can be satisfied with the debtor's postpetition wages and exempt property. *See Peale v. Miller*, No. 95–5681, 1996 WL 690158, at *1 (6th Cir. Nov.27, 1996); *In re Friedland*, 182 B.R. 576, 577, 579–80 (Bankr.D.Colo.1995); *In re Bennett*, 133 B.R. 374, 376 (Bankr.N.D.Tex. 1991); *In re Holden*, 101 B.R. 573, 577 (Bankr.N.D.Iowa 1989); *In re De La Rosa*, 91 B.R. 920, 922 (Bankr.S.D.Cal. 1988); *In re Ellrich*, 81 B.R. 132, 134 (Bankr.S.D.Fla.1987); *In re Hunt*, 59 B.R. 842, 843–44 (Bankr.N.D.Ohio 1986); *In re Epstein*, 39 B.R. 938, 941 (Bankr.D.N.M. 1984); *cf. In re Hollis Lumber Co.*, 55 F.2d 898, 898–900 (2nd Cir.1932) (interpreting 1898 Bankruptcy Act); *In re Bohrman*, 224 F. 287, 287–88 (S.D.Ga.1915) (same).

In other cases, a chapter 7 debtor's attorney required the debtor to personally pay for prepetition bankruptcy services after the order for relief, and no interested party, trustee, or judge had any reservations about the automatic stay or the discharge injunction. *See Schroeder v. Rouse (In re Redding)*, 247 B.R. 474, 475–77 (8th Cir. BAP 2000) (second payment of $4500 approximately two months after the conversion order [9]); *In re Novitzke*, 120 B.R. 483, 484, 486–87 (Bankr.W.D.Wis.1990); *In re Brown*, 82 B.R. 869, 870 (Bankr.

---

**9.** When a case is converted to a chapter 7 case, the conversion order constitutes the order for relief for purposes of determining what is a prepetition debt under § 727(b). *See* 11 U.S.C. § 348(b).

S.D.Ohio 1987); *In re Swartout,* 20 B.R. 102, 103, 106 (Bankr.S.D.Ohio 1982) (even mentioning how sections 524(a) and 727(b) would apply to prepetition legal services for a divorce); *In re Hill,* 5 B.R. 541, 541, 543 (Bankr.C.D.Cal.1980) (debtor originally gave $1500 promissory note in part for filing-preparation services).

In other cases, bankruptcy courts have recognized a chapter 7 debtor's personal contractual liability for postpetition legal services rendered pursuant to a prepetition contract.[10] *See In re Woodcock,* 100 B.R. 520, 521, 523–24 (Bankr.E.D.Cal. 1989); *Colter v. Edsall (In re Edsall),* 89 B.R. 772, 773, 776 (Bankr.N.D.Ind.1988). Significantly, they noted that a bankruptcy counsel would violate professional rules of conduct by refusing to continue to represent a debtor because of unpaid attorneys' fees, at least if the counsel failed to comply with the local U.S. district court rules for withdrawal. *See Woodcock,* 100 B.R. at 522–23; *Edsall,* 89 B.R. at 774–76. These opinions demonstrate that prior to the relatively recent line of cases beginning in 1994, subchapter II of chapter 3 was widely (if implicitly) understood to be a specific, detailed set of rules governing employment contracts with bankruptcy attorneys, and these specific rules pre-empted more general provisions like sections 362(a), 524(a)(2), 727(b), and 523(a).

The Supreme Court in its rule-making capacity has evidenced a similar understanding. Federal Rule of Bankruptcy Procedure 1006(b) permits a debtor to pay the bankruptcy filing fee in up to four installments, the latest of which may not be made payable "later than 120 days after filing the petition"; however, the debtor must pay the filing fee in full before he pays any amount to his bankruptcy coun-

sel. The rule makes no sense if the attorneys' fees cannot be collected postpetition.

The sole purpose of statutory construction is to find legislative intent. Nobody could seriously argue that Congress intended to make it impossible for chapter 7 debtors, but not debtors under the other relief chapters, to enter into agreements with their bankruptcy attorneys providing for payment after the commencement of the case. Such a result would not further the goal of relieving honest but financially distressed individuals from debt incurred in the past; rather, it would make it more difficult for many debtors to get the fresh start that is the promise of chapter 7. Such a result would, in Judge Posner's word, be "silliness." On the other hand, reading all relevant provisions of the Code in their context as part of a coherent whole, with a view towards fulfilling the overriding purposes of the statutory scheme, leads to the reasonable conclusion that Congress intended that attorney fee agreements be regulated under § 329 and necessarily excluded from the reach of the automatic stay and discharge. Supreme Court and Seventh Circuit authority requires this Court to interpret the Code in this manner.

This Court therefore concludes that the complaint fails to allege any violation of §§ 362 or 524. Because no such violation is alleged, there is no basis for a claim of professional negligence under Illinois law. Therefore, this Court will grant the Law Firms' motion to dismiss all counts of the Debtors' complaint for failure to state claims upon which relief can be granted.

---

**10.** As discussed above, bifurcating what is clearly a prepetition contract into prepetition and postpetition components is not consistent with the meaning of a prepetition claim under the Bankruptcy Code.